# United States Court of Appeals
## For the First Circuit

No. 06-1085

BUREL ORELIEN,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Torruella, Selya and Howard,
<u>Circuit Judges</u>.

<u>Harvey J. Bazile</u> and <u>Bazile & Associates</u> on brief for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, <u>Terri J. Scadron</u>, Assistant Director, Office of Immigration Litigation, and <u>Judith A. Hagley</u>, Attorney, United States Department of Justice, on brief for respondent.

November 3, 2006

**SELYA**, **Circuit Judge**.  The petitioner, Burel Orelien, seeks judicial review of an order of the Board of Immigration Appeals (BIA) denying his omnibus application for asylum, withholding of removal, or relief under the United Nations Convention Against Torture (CAT).  The petitioner asserts that the BIA erred in refusing to grant relief because he presented strong and credible evidence of persecution (past and anticipated). Discerning no error, we deny the petition.

The procedural background against which this proceeding plays out is straightforward.  The petitioner is a 54-year-old native of Haiti who arrived in the United States, without inspection, on May 15, 2000.  He filed a timely application for asylum.  An immigration officer interviewed him, found no merit in his application, and referred his case to the Immigration Court for the institution of a removal proceeding.  In due course, the authorities instituted such a proceeding.

On May 17, 2004, an immigration judge (IJ) convened a hearing.  The petitioner conceded removability but pressed his cross-application for asylum, withholding of removal, or relief under the CAT.  The IJ rejected the petitioner's asseverational array for two principal reasons: (i) a perceived lack of credibility and (ii) a failure to demonstrate either past persecution or a likelihood of future persecution.  The BIA affirmed the decision, relying exclusively on the latter ground.

-2-

Mindful of this circumscription, we treat the petitioner's testimony as credible for purposes of our factual rehearsal.

The petitioner testified that, while in Haiti, he toiled on a farm. He and his cousin, Frances Leger, were close friends. Leger, who worked in a fabric factory, felt that she was being "persecuted" by a co-worker. The petitioner testified that the co-worker followed Leger around at work, once accused her of harboring sentiments adverse to those of the political party in power, and threatened her with harm. In his testimony before the IJ, the petitioner did not identify any specific acts of violence perpetrated by the co-worker; however, he stated on his asylum application that Leger, on one occasion, was beaten by the antagonistic co-worker and two of his cohorts.

Leger did not testify at the hearing, but the petitioner attributed this "persecution" to the co-worker's envy of Leger's job. He readily admitted both that he was not a party to this feud and that he himself had never actually experienced any violence. He said, however, that he feared collateral damage because he was Leger's constant companion.

Leger was dismissed from her employment after a particularly vitriolic and accusatory encounter with the co-worker. Concerned about her safety, she decided to flee the country. The petitioner opted to join her and, in December of 1999, the two left Haiti.

As a second basis for his application, the petitioner testified that some of his family members are adherents of the Convergence Party, a group that opposes Haiti's ruling Lavelas Party. The petitioner mentioned no specific incidents of physical harm involving his relatives. Nevertheless, he suggested that, should he be deported to Haiti, he would be subject to persecution because of his relatives' political beliefs (the petitioner himself has never been a member of the Convergence Party and his trepidation is based entirely on the possibility of imputed political opinion).

The administrative record contains a State Department report on country conditions in Haiti for the year 2003. According to that document, the Lavelas Party came to power through corruption and ballot manipulation in national elections held in November of 2000. The Convergence Party contested those elections and thereafter challenged the Lavelas Party's hegemony. The struggle grew acrimonious and sporadic violence ensued, culminating in the attempted murder of two Convergence Party leaders. Virtually all of the violence occurred <u>after</u> the petitioner's departure from his homeland.

Neither the IJ nor the BIA found this two-faceted account persuasive. Our review is directed at the BIA's decision. In conducting that appraisal, we evaluate the BIA's findings of fact under the deferential "substantial evidence" standard. <u>Guzman</u> v.

INS, 327 F.3d 11, 15 (1st Cir. 2003). This standard applies equally to asylum, withholding of removal, and CAT claims. Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004).

This standard of review dictates that the BIA's fact-based determinations be upheld unless a "reasonable adjudicator would be compelled to conclude to the contrary." Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Put another way, the BIA's findings of fact must be accepted as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). In contrast, the BIA's answers to abstract legal questions are reviewed de novo.[1] Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004).

With this tapestry in place, we turn to the petitioner's asylum claim. It is the alien's burden to show eligibility for asylum. To do so, the alien must establish that he is a "refugee" within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1). See Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). The alien can achieve refugee status by showing that, as a practical matter, he cannot "return to his country of nationality or avail himself of that country's protections because of

---

[1]There is an exception to this rule for the BIA's interpretation of statutes that it must administer. See Bocova, 412 F.3d at 262. That exception is of no moment here.

-5-

persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in an particular social group, or political opinion." Ang v. Gonzales, 430 F.3d 50, 55 (1st Cir. 2005) (citation and internal quotation marks omitted); see 8 U.S.C. § 1101(a)(42)(A).

If the alien succeeds in showing past persecution based on one of these five enumerated grounds, he is entitled to a rebuttable presumption of future persecution. Harutyunan v. Gonzales, 421 F.3d 64, 67 (1st Cir. 2005). If — and only if — that presumption arises, the burden shifts to the government to prove either "a fundamental change in circumstances such that the alien no longer has a well-founded fear of persecution in [his] country of nationality" or a practicable means of "avoid[ing] future persecution by relocating to another part of [his] country of nationality." 8 C.F.R. § 208.13(b)(1)(i)(A)-(B).

The inability of an alien to establish past persecution does not entirely dash his hopes for asylum. An alien may prevail on an asylum claim by proving, simpliciter, a well-founded fear of future persecution independent of any presumption. See Ang, 430 F.3d at 55; Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 124 (1st Cir. 2005). Traversing this avenue requires the alien to demonstrate that his fear of future persecution is both subjectively and objectively reasonable. See Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005). In other words, the professed fear

-6-

must be both genuine and nestled on a plausible factual predicate. See id.

Here, the petitioner strives to keep both routes open by showing not only past persecution but also an independent fear of future persecution. In the last analysis, neither route affords him the access that he seeks.

With respect to past persecution, the petitioner relies mainly on the Leger evidence (after all, the Lavelas Party did not obtain broad control over the various units of government in Haiti until after the petitioner had departed). To determine whether this route is passable, we must consider the supportability of the BIA's determination that no past persecution occurred.

The word "persecution" has not been defined by statute, and this court — like the BIA — has decided that the concept is best addressed on a case-by-case basis. See Bocova, 412 F.3d at 263; see also In re L—K—, 23 I&N Dec. 677, 683 (BIA 2004). This does not mean, however, that the inquiry is standardless. It is clear, for example, that the term "requires that the totality of a petitioner's experiences add up to more then mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005); accord Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). This threshold is not easily crossed. See, e.g., Bocova, 412 F.3d at 264 (upholding the BIA's determination that harassment and occasional beatings by the

Albanian police did not amount to persecution); Rodriguez-Ramirez, 398 F.3d at 124 (upholding the BIA's determination that an isolated act of violence against a family member is not enough to establish persecution).

In the hot glare of these precedents, the petitioner's claim of past persecution melts away. For one thing, he has proffered no evidence showing any actual violence directed against him. For another thing, he has not shown that his cousin, though threatened, stalked, and perhaps beaten on one occasion, has actually experienced anything that might resemble persecution. Even crediting his evidence fully, the most that the petitioner has shown is that his cousin (and, by indirection, he himself) experienced a modicum of discomfiture, harassment and abuse. That is too frail a lance to unhorse the BIA's fact-based finding that nothing amounting to persecution occurred. See Nikijuluw, 427 F.3d at 121.

We add, moreover, that the petitioner's "past persecution" claim is doubly deficient. Persecution always implies some connection to governmental action or inaction, related to a protected ground for asylum (say, social group membership or political opinion). See id.; Harutyunyan, 421 F.3d at 68. This means, among other things, that one who seeks asylum must show mistreatment that is the "direct result of government action, government-supported action, or government's unwillingness or

inability to control private conduct." Nikijuluw, 427 F.3d at 121. "[A]ction by non-governmental actors can undergird a claim of persecution only if there is some showing that the alleged persecutors are in league with the government or are not controllable by the government." Da Silva, 394 F.3d at 7.

The petitioner has wholly failed to attain this milestone. He has not demonstrated that any of the actors involved in Leger's mistreatment were somehow tied to the government. For aught that appears, his cousin was threatened (and perhaps roughed up) by a co-worker who was envious of her job.

It is, of course, true that government inaction sometimes can be sufficient to show persecution. See, e.g., Singh v. INS, 94 F.3d 1353, 1360 (9th Cir. 1996); de la Llana-Castellon v. INS, 16 F.3d 1093, 1097 (10th Cir. 1994). Here, however, the petitioner did not offer a scintilla of evidence to show that either he or his cousin sought governmental protection from the maraudings of this jealous co-worker, let alone that the authorities could not or would not provide protection.[2]

We turn next to the petitioner's claim that he proved a well-founded fear of future persecution. This is a claim of

---

[2]If more were needed — and we do not believe that it is — the petitioner also failed to demonstrate that the abuse he described was related in any way to his or his cousin's race, religion, nationality, social group membership, or political opinion. The absence of such a demonstration is a fatal flaw. See Toloza-Jimenez v. Gonzales, 457 F.3d 155, 160 (1st Cir. 2006).

persecution on the basis of consanguinity; the petitioner himself testified that he had no political allegiances. Instead, he relies principally on his relatives' membership in the Convergence Party. His premise is sound: claims of persecution may, in appropriate circumstances, rest on imputed political opinion. See Vasquez v. INS, 177 F.3d 62, 65 (1st Cir. 1999) (articulating this premise); Ravindran v. INS, 976 F.2d 754, 760 (1st Cir. 1992) (same).

In this instance, however, the claim founders. To begin, the record indicates that neither the petitioner nor his politically active family members experienced any mistreatment before the petitioner emigrated to the United States. As to violence that may have occurred thereafter, the record is sparse. From what we can tell, the violence between the Convergence Party and the Lavelas Party consisted of isolated incidents directed against certain party leaders. There is no indication that any of the petitioner's relatives were targeted or that any of them comprised part of the Convergence Party's leadership. Nor is there any evidence that rank-and-file members of the Convergence Party are routinely exposed to persecution.

The thinness of the record dooms the petitioner's claim. The petitioner has the burden of proof on this issue, see Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006), and he has adduced insufficient evidence to compel a finding that his professed fear of future persecution has a plausible basis in fact.

Under those circumstances, we cannot set aside the challenged finding.  See Khem v. Ashcroft, 342 F.3d 51, 54 (1st Cir. 2003) (upholding the BIA's ruling that a person who never had held party office or made public speeches had not demonstrated a well-founded fear of future persecution on the basis of political belief).

This brings us to the petitioner's quest for withholding of removal.  That quest carries with it a more stringent burden of proof than does a counterpart effort to obtain asylum.  See Ang, 430 F.3d at 58 (explaining that withholding of removal requires an alien to establish a clear probability of persecution, rather than a well-founded fear of persecution); Rodriguez-Ramirez, 398 F.3d at 123 (same).  In view of our holding that the BIA supportably denied the petitioner's asylum claim, see supra, his claim for withholding of removal becomes a dead letter.

The final leg of our journey takes us to the petitioner's CAT claim.  Under the terms of the CAT, the United States cannot return an alien to his country of nationality if "there are substantial grounds for believing [he] would be in danger of being subjected to torture."  Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822 (1998).  In order to find sanctuary under the CAT, however, an alien must show that he will more likely than not be tortured upon returning to his homeland.  See Ang, 430 F.3d at 58. Torture is a term of art, defined by regulation as "any act by

-11-

which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person."  8 C.F.R. § 208.18(a)(1).

In this instance, the petitioner has proffered no evidence of physical harm directed against him while he was in Haiti.  By the same token, he has proffered no evidence, either direct or circumstantial, that he will be tortured at the hands of the government should he be returned to Haiti.  This utter failure of proof compels us to uphold the BIA's denial of redress under the CAT.  In this particular, as in other particulars, the BIA's decision must stand because the evidence does not "point[] unerringly in the opposite direction."  Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004).

We need go no further.  For the reasons elucidated above, we sustain the final order of removal and deny the petition for review.

**So Ordered**.