**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

---

No. 06-2208

ALMA PULA,

Petitioner,

v.

ALBERTO R. GONZÁLES, ATTORNEY GENERAL,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Boudin, <u>Chief Judge</u>,
Torruella and Lipez, <u>Circuit Judges</u>.

---

<u>Fatos Koleci</u> on brief for petitioner.
<u>Michael Sady</u>, Assistant U.S. Attorney, and <u>Michael J. Sullivan</u>, United States Attorney, on brief for respondent.

---

July 13, 2007

---

**Per Curiam**.  Alma Pula ("Pula"), her husband, and their two children, all of whom are natives and citizens of Albania, petition for review of a decision of the Board of Immigration Appeals ("BIA"), dismissing their appeal from a decision of an immigration judge ("IJ") denying their claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

The undisputed facts are essentially as follows:  Pula and her family are well-known anti-communists and supporters of the Democratic Party.  When she left Albania, the Socialist Party was in power.  For some time before that, she had been serving as the Vice Director of the Higher School of Nursing.  The Director, who was a doctor and member of the Socialist Party, resented her because she was a woman and a nurse, had strong connections with foreign funding sources, had instituted various reforms at the school giving nurses more teaching responsibility, and had complained that students were being sexually harassed and extorted for money by doctors on the faculty.  In response to those complaints, the Director said, "[T]he Jaranis [Pula's family] are always troublemakers[;] . . . they think they are so perfect . . . [W]ho cares about your democratic little ideas."

After Pula learned that her position was being advertised with enhanced qualifications that only a doctor could satisfy and that the position was likely to be filled by a doctor with

-2-

Socialist Party connections, she confronted the Director and threatened to expose the corruption and sexual harassment at the school. Two days later, when she was walking home from the school, she was accosted by an unknown man (whom she thought was a member of the Albanian secret police because of the way he was dressed), who called her a "bitch of Sali Berisha," the leader of the Democratic Party; grabbed her by the hair; and told her to shut up or he would make her shut up, which she took as a death threat. When she arrived home, she found that her two young sons had disappeared. When the boys returned unharmed a few hours later, they reported that a man who said that he was a friend of hers took them for a ride, bought them ice cream, and told them to tell their mother to take better care of them in the future. Shaken up by those two events, which she thought were connected, she consulted a family friend who advised her to stay indoors and ultimately to leave Albania. She took his advice, and she and her sons left a month later to join her husband, who was already in the United States visiting relatives.

In finding Pula and her family ineligible for asylum, the BIA correctly determined that Pula's alleged mistreatment, while undoubtedly frightening, did not rise to the level of "persecution" for purposes of eligibility for asylum or withholding of removal. See, e.g., Alibeaj v. Gonzales, 469 F.3d 188, 189-90 (1st Cir. 2006) (concluding that death threats, beating, and misappropriation

of property, without any permanent or serious physical injuries, were "plainly insufficient to compel a finding of persecution"). The BIA also permissibly rejected Pula's claim that those events were on account of her political beliefs. See Ziu v. Gonzales, 412 F.3d 202, 204-05 (1st Cir. 2005) (holding that "IJ was free to reject such speculation as to motive even while generally finding petitioner credible as to historical facts"). The timing of the alleged incidents--just two days after Pula had threatened to expose corruption in the nursing school's handling of donated funds--is a strong indication that those incidents were motivated by a desire to silence such exposure rather than by Pula's long-standing political affiliation or beliefs. As Pula herself testified, coming between embezzlers and their funding sources could well place her in danger. Finally, the BIA also supportably determined that Pula had failed to show that the unidentified men who assaulted and threatened her and abducted her sons were connected with the Albanian government. Her testimony that the assault occurred near the headquarters of the secret police and that the assaulter resembled a member of that organization because he was wearing a light gray business suit certainly does not compel a finding of a government connection. See generally Attia v. Gonzales, 477 F.3d 21, 13 (1st Cir. 2007) (stating applicable standard of judicial review). She provided no

evidence at all that the abductor of her children was a government agent.

Absent past persecution on a protected ground, the IJ correctly placed the burden on Pula to prove that she had a well-founded fear of future persecution, Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006), and concluded that she had failed to do so. Although neither the IJ nor the BIA explained their reasoning on this point, "the agency's path may reasonably be discerned" from the record. Tota v. Gonzales, 457 F.3d 161, 166 n.9 (1st Cir. 2006) (quotation marks and citation omitted); see also Sulaiman v. Gonzáles, 429 F.3d 347, 350 (1st Cir. 2005) (declining to remand for an express finding on past persecution where agency's reasoning was sufficiently clear from the record to permit judicial review). Like her claim of past persecution, Pula's fear of future persecution was premised on the scenario that if forced to return to Albania, she would expose corruption at the nursing school and would be persecuted on that ground. The determination that Pula's alleged past persecution on that ground was not on account of her political beliefs applies equally well to her fear of future persecution on that same ground.

The fact that the IJ's and BIA's decisions did not expressly mention some evidence in Pula's favor--including the declaration and testimony of Bernd Fischer, a professor of Balkan history, who opined that Pula had reason to fear persecution by the

Socialist Party government--is inconsequential. "[E]ach piece of evidence need not be discussed in a decision." Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000). Rather, "'in the absence of clear evidence to the contrary, [we] presume that [the IJ and BIA] have properly discharged their official duties.'" Tota, 457 F.3d at 168 (citation omitted). No such contrary evidence exists here. Indeed, in the course of the hearing, the IJ expressly stated that he had reviewed the documentary evidence, including Professor Fischer's declaration, before the hearing, and the IJ also allowed Dr. Fischer to testify by telephone even though his declaration was already in evidence.

Moreover, a review of the record in its entirety does not compel a contrary conclusion. Even Dr. Fischer's opinion that Pula had grounds to fear persecution by the Socialist Party government was qualified. And the recent reports of country conditions in the record indicate that politically related violence by the Socialist Party government against Democratic Party supporters had abated by the time of the hearing before the IJ. See also Tota, 457 F.3d at 166-67; Alibeaj, 469 F.3d at 193.

Having properly found Pula and her family ineligible for asylum, the BIA also correctly concluded that they could not meet the higher standard for withholding of removal. Orelien, 467 F.3d at 73. Its determination that the Pulas were not eligible for CAT relief was also legally correct and supported by the record. As

the IJ and BIA concluded, Pula presented no evidence that she would likely be "tortured" upon returning to Algeria, as that term is narrowly defined in the applicable regulations. See id. (citing 8 C.F.R. § 208.18(a)(1)).

In sum, we find the BIA's decision to be free of legal error and supported by substantial evidence in the record as a whole. Accordingly, we affirm the BIA's decision and deny the petition for review. See 1st Cir. R. 27.0(c).