Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-2166

CELONY MICHEL,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Howard, Circuit Judge,
Selya, Senior Circuit Judge,
and Stafford,* Senior District Judge.

Robert M. Warren on brief for petitioner.
Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, and Anthony Wray Norwood, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

July 28, 2008

*Of the Northern District of Florida, sitting by designation.

**Per Curiam**.  The petitioner, Celony Michel, is a Haitian national and a self-proclaimed member of a Haitian political group known as the Democratic Convergence.  He seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying his petition for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  Ceding appropriate deference to the BIA's decision, we deny the petition.

The facts are relatively straightforward.  On August 25, 2001, the petitioner entered the United States using an altered passport and an assumed name.  Shortly after his arrival, the Immigration and Naturalization Service (INS) apprehended him.  The INS then charged him with being an alien subject to removal from the United States.  See 8 U.S.C. §§ 1182(a)(6)(C)(i), 1182(a)(7)(A)(i)(I).  The petitioner conceded removability but cross-applied for asylum, withholding of removal, and protection under the CAT.

At an ensuing hearing before an immigration judge (IJ), the petitioner described three instances of mistreatment allegedly occurring in 1996, 1999, and 2001.  He argued that these incidents established past persecution on account of his political opinion and, therefore, triggered a presumption of future persecution should he be repatriated.  See 8 C.F.R. § 1208.13(b)(1).  In elaboration, he explained that his association with the Convergence

party had made him a target for supporters of Haiti's then-President Jean-Bertrand Aristide.

Of the three incidents, two involved unjustified arrests, incarceration without charges, and imprisonment in terrible conditions. Following the first arrest in 1996, the petitioner left his wife and children in Maissade to seek shelter with other family members in L'Hermit. The second arrest occurred in 1999 when he returned to Maissade for a visit. The petitioner claims that he was beaten but he did not seek medical attention.

The petitioner later moved from L'Hermit to Port-au-Prince. In 2001, after he voted for a Convergence party candidate in an election, members of the opposition Lavalas party (a group beholden to President Aristide) beat him. Following this incident, he left Haiti for the United States. According to the petitioner, Lavalas adherents from time to time asked his wife, who remained in the country, about his whereabouts — but nothing in the record indicates either that these inquiries were threatening or that violence was imminent if he returned to Haiti.

The IJ found that the petitioner was credible and had established past persecution on account of his political viewpoint. The IJ also found, however, that the petitioner could not sustain the presumption of a well-founded fear of future persecution — the showing required for a grant of asylum — because Aristide was no longer in power in Haiti and the circumstances had fundamentally

changed. See 8 C.F.R. § 1208.13(b)(1)(i)(A). Thus, no relief was available to him.

After considering the petitioner's appeal, the BIA affirmed these findings and conclusions. Consequently, the petitioner could not satisfy the requisite burden of proof for asylum. That meant that his claim for withholding of removal necessarily failed. See Attia v. Gonzales, 477 F.3d 21, 24 (1st Cir. 2007); see also INS v. Stevic, 467 U.S. 407, 430 (1984) (explaining that the alien's burden for withholding of removal is a "clear probability of persecution"). The BIA also affirmed the IJ's determination that the petitioner had not demonstrated that, more likely than not, he would be tortured with the connivance or acquiescence of the Haitian government if he were repatriated. That ended the petitioner's CAT claim. See 8 C.F.R. § 1208.16(c)(4).

In the alternative, the petitioner asked the BIA to remand the case for the consideration of new evidence. The BIA denied the motion, finding that the proffered evidence did not materially augment any of the petitioner's arguments. A remand was, therefore, pointless. See Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2008); Matter of Coelho, 20 I. & N. Dec. 464, 471-73 (BIA 1992).

Following the issuance of a removal order, the petitioner filed this timely petition for judicial review. We have jurisdiction under 8 U.S.C. § 1252(a)(1).

Our review is centered on the BIA's decision. See Orelien v. Gonzales, 467 F.3d 67, 70 (1st Cir. 2006). But where, as here, the BIA has endorsed and elaborated upon the IJ's findings, we review in tandem the decisions of both the BIA and the IJ. See Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006).

Our standard of review is familiar. When assessing findings of fact in immigration proceedings, we must respect those findings as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); see Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007). This deferential approach requires that a factual determination be upheld unless the record compels a contrary determination. 8 U.S.C. § 1252(b)(4)(B); Elias-Zacarias, 502 U.S. at 483-84; López de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007).

The IJ's decision must be clear but not necessarily comprehensive. He "need not address each and every piece of evidence" adduced by the petitioner; he must, however, "at least make findings, implicitly if not explicitly, on all grounds necessary for decision." Un v. Gonzales, 415 F.3d 205, 209 (1st Cir. 2005) (citation and internal quotation marks omitted).

A special standard of review applies to abstract legal questions. We review answers to such questions de novo, but give some deference to the agency's reasonable interpretation of statutes and regulations that fall within its purview. Pan, 489 F.3d at 85; see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984).

Against this backdrop, we turn to the petition for judicial review. We begin by evaluating the petitioner's asylum claims and the denial of the motion to remand. We then briefly address his claim for withholding of removal. The CAT claim has not been briefed in this court and, accordingly, we deem that claim abandoned. See Rotinsulu v. Mukasey, 515 F.3d 68, 71 (1st Cir. 2008).

In order to qualify for asylum, an alien must demonstrate that he is a "refugee" as that term is used in federal law. See 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a); see also Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). To carry this burden, the alien must prove that he is unable or unwilling to repatriate because of persecution related to race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); see Orelien, 467 F.3d at 70. As part of this showing, the alien must forge a causal link between the persecution (whether past or feared) and one of those five statutorily protected grounds. Id. § 1101(a)(42)(A); López de

Hincapie, 494 F.3d at 217; Raza, 484 F.3d at 128-29. The requisite showing may be made by traveling along one of two avenues: either by establishing past persecution and thus triggering a presumption of future persecution, or by independently demonstrating a well-founded fear of future persecution. López de Hincapie, 494 F.3d at 217.

In the case at hand, the petitioner's primary remonstrance is that the BIA undervalued his evidence anent the current conditions of political unrest and violence in his native land. To support this argument, he emphasizes the three incidents of mistreatment that he endured while living in Haiti. These incidents, however, reflect only past persecution; the latest of them occurred in 2001. While they suffice to trigger a presumption of future persecution, see 8 C.F.R. § 1208.13(b)(1), that presumption is rebuttable — and the incidents themselves have very little bearing on current conditions in Haiti.

To be sure, when a finding of persecution on account of one of the five statutorily protected grounds (here, political opinion) triggers a rebuttable presumption of future persecution, the burden shifts to the government to prove that the petitioner could now return safely to his homeland either because threatening circumstances had abated or because he could safely relocate there. See Orelien, 467 F.3d at 71; see also 8 C.F.R. §

1208.13(b)(1)(i)(A)-(B). The government must prove its rebuttal by a preponderance of the evidence. 8 C.F.R. § 1208.13(b)(ii).

The BIA determined that the government had successfully rebutted the presumption of future persecution because the evidence indicated a regime change: Aristide had been deposed in February of 2004. See U.S. Dep't of State, 2006 Country Reports on Human Rights Practices - Haiti § 3. That shift in power constituted a fundamental change in circumstances sufficient to vitiate any well-founded fear of persecution in Haiti on account of the petitioner's pro-Convergence leanings. If supported by preponderant evidence, that explanation was enough to satisfy the government's burden. See, e.g., Jorgji v. Mukasey, 514 F.3d 53, 59 (1st Cir. 2008) (explaining that persecution could not reasonably be anticipated when "the regime that fostered [the past persecution] has long since been supplanted"); Ang v. Gonzales, 430 F.3d 50, 57 (1st Cir. 2005) (noting that a regime change "effectively eliminates any argument that [petitioner] would be persecuted"); see also Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004) (holding that the BIA's findings must be honored unless the evidence "points unerringly in the opposite direction").

This is the crux of the matter. The BIA accepted the government's explanation and, to set aside that determination, the petitioner must show that the record evidence compels rejection of that explanation. See Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st

Cir. 1999) (explaining that "the administrative record, viewed in its entirety, must compel the conclusion that the alien is asylum-eligible"). We turn, then, to that question.

A review of the record leaves no doubt that this determination is supported by substantial and preponderant evidence. The historical predicate for the BIA's decision — President Aristide's ouster — cannot be gainsaid. When Aristide left, his Lavalas supporters lost their influence in national affairs. With the levers of power having been wrested from the hands of his antagonists, there is no realistic possibility that the petitioner's pro-Convergence sympathies will place him in the Haitian government's cross-hairs. See Sok v. Mukasey, 526 F.3d 48, 53 (1st Cir. 2008) ("[P]ersecution always implies some connection to government action or inaction.") (internal quotation marks omitted). So viewed, the record cannot be said to compel a finding that the petitioner harbored an objectively reasonable fear that his allegiance to the Democratic Convergence will be a source of future persecution.

The second avenue for conferring asylum requires an independent showing, unaided by any presumption, of a well-founded fear of future persecution based on a statutorily protected ground. Makhoul, 387 F.3d at 79. To show a well-founded fear of future persecution, an alien must establish that his fear was both genuine and objectively reasonable. Orelien, 467 F.3d at 71; Aquilar-

-9-

<u>Solis</u>, 168 F.3d at 572. The objective component must be "nestled on a plausible factual predicate." <u>Orelien</u>, 467 F.3d at 71. This necessitates a showing that "a reasonable person in the asylum applicant's circumstances would fear persecution on account of a statutorily protected ground." <u>Aquilar-Solis</u>, 168 F.3d at 572.

Based on essentially the same reasoning elucidated above, the BIA determined that the petitioner had not made the requisite showing. In its view, the regime change eliminated any objectively reasonable basis for the petitioner's avowed fear of future persecution on account of his political views. This is an eminently supportable assessment of the record: there is simply no evidence of a pattern or practice of persecution of Convergence party members following President Aristide's fall from power. <u>See</u> 8 C.F.R. § 1208.13(b)(2)(iii). Without evidence of a particularized threat to the petitioner or other members of the Democratic Convergence, we are not at liberty to reverse the BIA's decision.[1] <u>See</u> <u>Segran</u> v. <u>Mukasey</u>, 511 F.3d 1, 5-6 (1st Cir. 2007) (explaining that deference is due not only to findings of fact but

_____

[1]The petitioner makes no explicit appeal that we review the BIA's denial of his motion to remand, nor need we linger long over the new evidence he proffered in connection with that motion. It is settled beyond peradventure that general conditions of violence in a country cannot alone support a claimed fear of persecution. <u>See</u> <u>López de Hincapie</u>, 494 F.3d at 219-20; <u>Mendoza Perez</u> v. <u>INS</u>, 902 F.2d 760, 761-62 (9th Cir. 1990); <u>Matter of S-V-</u>, 22 I. & N. Dec. 1306, 1310 (BIA 2000). The new evidence that the petitioner proffered here was evidence of general conditions of violence. Thus, the BIA's denial of the motion to remand was well within its discretion.

also to determinations about whether particular facts support a claim of persecution).

In an effort to blunt the force of the BIA's reasoning, the petitioner argues that the BIA failed to apply the standard announced in Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987), in determining that he had not established a well-founded fear of persecution. In Mogharrabi, the BIA recognized that "an applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution." Id. at 445. The petitioner's argument fails because the BIA, like the IJ, presented President Aristide's ouster as the reason why no objectively reasonable person would thereafter fear persecution on account of pro-Convergence sentiments. No more was exigible.[2] See Orelien, 467 F.3d at 72. On this basis, we find the argument that the BIA did not abide by its Mogharrabi standard unconvincing.

Relatedly, the petitioner calumnizes the BIA for a failure adequately to assess his evidence of persecution. Citing Sotto v. INS 748 F.2d 832, 837 (3d Cir. 1984), he insists that the BIA's decision must be remanded due to a failure to refer to relevant evidence.

---

[2]In this regard, we think it is instructive that, in Mogharrabi, the petitioner's fear of persecution stemmed from his "clearly expressed . . . political views" and the fact that "his opinions were extremely derogatory to the regime in power." 19 I. & N. Dec. at 448 (emphasis supplied).

-11-

This is a bogus argument.  The BIA's decision here must be understood as adopting the IJ's findings.  See Laurent, 359 F.3d at 64 n.3.  That the BIA did not itself rehearse each and every IJ finding does not allow an inference of superficial review.[3]  See, e.g., Raza, 484 F.3d at 128 ("An agency is not required to dissect in minute detail every contention that a complaining party advances.").

Finally, the petitioner argues that the Haitian government is unable or unwilling to control the Lavalas party and that this inability justifies a grant of asylum.  This argument is little more than a rehash of the arguments previously rejected.  There is no hard evidence that the government is unable to control whatever may remain of the Lavalas party.  In the last analysis, then, the salient principle is that generalized conditions of political unrest cannot constitute a basis for a claim of political asylum.  See Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004) (holding evidence of generalized problems insufficient); Matter of S-V-, 22 I. & N. Dec. 1306, 1310 (BIA 2000) (same).

To sum up, we are not without some sympathy for the petitioner's position.  Haiti remains a nation in which violence is part of the political climate.  But a general state of disarray within a country is not in itself enough of a foundation to support

---

[3] In all events, this case is at a commendable remove from Sotto, in which both the IJ and the BIA entirely ignored an affidavit without explaining why.  See Sotto, 748 F.2d at 837.

a claim for asylum.  We therefore uphold the BIA's denial of asylum here.

That effectively ends the matter.  Because the petitioner cannot establish eligibility for asylum, he cannot establish eligibility for withholding of removal.  After all, the showing that is required for withholding of removal is parallel to, but more demanding than, that required for a counterpart claim for asylum.  See Ang, 430 F.3d at 58 (explaining that withholding of removal requires an alien to establish a clear probability of persecution, rather than a well-founded fear of persecution).  In view of our holding that the BIA supportably denied the petitioner's asylum claim, his claim for withholding of removal becomes a dead letter.  Orelien, 467 F.3d at 73.

We need go no further.  For the reasons elucidated above, the petition for judicial review must be denied.

**So Ordered**.