# United States Court of Appeals
## For the First Circuit

Nos. 06-2599
     07-1754

ZULKIFLY KADRI,

Petitioner,

v.

MICHAEL B. MUKASEY,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Stafford,* District Judge,
Torruella, Circuit Judge.

William A. Hahn, and Hahn & Matkov, on brief for petitioner.
     Corey L. Farrell, Attorney, Office of Immigration Litigation,
Jeffrey S. Buscholtz, Acting Assistant Attorney General, Civil
Division, and Greg D. Mack, Senior Litigation Counsel, on brief for
respondent.

September 30, 2008

---

* Of the Northern District of Florida, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Zulkifly Kadri, a Muslim native of Indonesia, came to the United States on a non-immigrant visa.  He filed a petition for asylum on the ground that he was persecuted in Indonesia because of his sexual orientation.  He asserted that he was ostracized in the workplace and prevented from earning a livelihood as a medical doctor; and that he fears that if returned to Indonesia, he would face continued persecution.  An Immigration Judge ("IJ") found him credible, found that he belonged to a particular social group, and granted him asylum.  The Department of Homeland Security ("DHS") appealed to the Board of Immigration Appeals ("BIA"), and the BIA reversed the decision of the IJ.  Kadri petitions for a review of the BIA's decision.  After careful consideration, we grant the petition and remand.

## I.  Background

"We summarize the evidence as [Kadri] presented it to the IJ in [his] testimony and in the affidavit accompanying [his] asylum application; we then consider the IJ's and BIA's findings in relation to that evidence."  Sok v. Mukasey, 526 F.3d 48, 50 (1st Cir. 2008) (citing Mihaylov v. Ashcroft, 379 F.3d 15, 18 (1st Cir. 2004)).  Kadri worked as a doctor in Jakarta, Indonesia at the Usada Insani Hospital from 1992 until 2001, and at the Abdul Rahman Clinic from 1997 until 1999.  In 1999, Kadri testified that the owner of the Abdul Rahman Clinic fired him because he heard rumors that he was a homosexual.  According to Kadri, the owner of the

-2-

clinic said  that he could not "tolerate [Kadri's homosexual] behavior."

In May 2001, the board of the Usada Insani Hospital summoned Kadri and asked him about rumors that he was a homosexual. He refused to answer their questions and informed the board that his sexual orientation was a private matter.  The next month, Kadri testified that he was verbally assaulted by a regular client whose extended family he knew well.  In a crowded emergency room, the woman screamed over and over again:  "Get out, faggot, and don't touch my son."  Following this incident, other patients refused to be seen by Kadri.  The hospital board again asked Kadri about his sexual orientation;  again, he refused to answer, reiterating that their questions had nothing to do with his responsibilities as a doctor.  The hospital asked him to voluntarily resign, but he refused.  Though Kadri retained his job at the hospital, he was only paid a base salary of about $10 a month because he was not assigned any patients.  Following these incidents, word spread to Kadri's colleagues that he was a homosexual; his colleagues avoided him and refused to talk to him.

Kadri retained a lawyer and filed a lawsuit against the hospital.  Kadri asserts that the judge was merely interested in his sexual orientation and not in how he performed at the hospital. Even though his lawyer objected to the line of questioning by opposing counsel and the judge regarding Kadri's sexual orientation

and private life, the judge demanded to know if Kadri was a homosexual. Kadri testified that he felt "torture[d] mentally" by the judge and, thus, dropped his case.

Kadri entered the United States on a non-immigrant visa on May 16, 2002, and he was authorized to remain in the United States until November 15, 2002. Kadri filed an I-589 asylum application with the Immigration and Naturalization Service ("INS") -- now DHS -- while he was still lawfully in the United States. In his application, Kadri stated that he is a homosexual and that he was seeking asylum based on his membership in a particular social group. He was interviewed by an asylum officer who referred his application to the immigration court. At the hearing, Kadri recounted his experiences at the clinic and hospital. He presented evidence that described the social climate for homosexuals in Indonesia and how they have been treated in society generally and by the government in particular. Kadri also submitted two letters to the IJ from former colleagues -- one from the hospital and one from the clinic -- confirming that his problems at the two facilities resulted from rumors that he was a homosexual.

Kadri testified that he did not attempt to open his own medical practice in Indonesia because of the difficulty and barriers to opening a private practice. He also testified that the medical community is small and insular and that the rumors about his sexual orientation were already rampant within a professional

community where "[e]verybody knows everybody."  Kadri testified that it would not have mattered if he had moved to a different part of Indonesia given the size and intimacy of the medical community; the rumors about his sexual orientation would follow him anywhere in the country.  He noted that the medical community is like "a big family in Indonesia, and so everywhere I go, I still can find my . . . colleagues there.  I still can find my classmate[s] everywhere, so anywhere I go this story will follow[] me."

The IJ found Kadri credible and concluded that he suffered past persecution because he was deprived of the ability to earn a living.  After reviewing the evidence in the record, the IJ concluded that Kadri met his burden of proving a well-founded fear of future persecution.  The IJ specifically found that "in Indonesia [there is] an attitude, atmosphere, and an environment of hostility towards the gay community, which is so discriminatory and so pervasive as to rise to the level of persecution."  Furthermore, the IJ found that a reasonable person in Kadri's situation would fear persecution.  For these reasons, he granted asylum.  The DHS appealed the grant of asylum to the BIA, and the BIA reversed by a vote of two to one.  The BIA majority disagreed with the IJ's conclusions regarding Kadri's claim that he suffered past persecution, holding that "the economic deprivation described by

the respondent does not compel a finding of past persecution."[1] Noting that "closeted homosexuality is tolerated in Indonesia" and that the State Department's human rights report does not mention violence against homosexuals, the majority concluded that Kadri did not present sufficient evidence of a well-founded fear of future persecution. Kadri filed a motion to reconsider, but the BIA denied the motion. Kadri petitions for review.[2]

## II. Discussion

### A. Standard of Review

This court reviews the factual findings of the BIA for substantial evidence. Orelien v. Gonzáles, 467 F.3d 67, 70 (1st Cir. 2006). The BIA's fact-based determinations should be upheld unless a "reasonable adjudicator would be compelled to conclude to the contrary." Id. (quotation marks and citation omitted). "Put another way, the BIA's findings of fact must be accepted as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting I.N.S. v. Elías-Zacarías, 502 U.S. 478, 481 (1992)); accord Hernández-Barrera v. Ashcroft, 373 F.3d 9, 20 (1st Cir. 2004). We will

---

[1] The dissenting panel member concluded that "it is not apparent that [the IJ] employed the correct standard" for economic persecution and would have remanded on that basis; he expressed no view on Kadri's claim of future persecution.

[2] The National Lawyers Guild, the Gay & Lesbian Advocates & Defenders, and the National Immigrant Project submitted an amicus brief in support of Kadri.

reverse the BIA if a petitioner "show[s] that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Elías-Zacarías, 502 U.S. at 483-84; accord Quevedo v. Ashcroft, 336 F.3d 39, 43 (1st Cir. 2003). Generally, the BIA is prohibited from "engag[ing] in factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(d)(3)(iv). "Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." Id. § 1003.1(d)(3)(i).[3] The BIA's legal conclusions are reviewed de novo, but we give appropriate deference to its interpretations of the governing statute. See Lin v. Mukasey, 521 F.3d 22, 26 (1st Cir. 2008) (citing Albathani v. I.N.S., 318 F.3d 365, 372 (1st Cir. 2003)).

### B. Applicable Law

The Attorney General has the discretion to grant an alien asylum if the alien is a refugee. See 8 U.S.C. § 1158(b)(1)(A). A "'refugee'" is any person outside his or her home country "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership

---

[3] Kadri argues that the BIA did not apply the appropriate standard under this regulation; however, we need not decide this issue because we remand on other grounds.

in a particular social group, or political opinion."  Id. § 1101(a)(42)(A); accord Ravindran v. I.N.S., 976 F.2d 754, 758 (1st Cir. 1992).  To qualify as persecution, the government "must be the source of or at least acquiesce in the persecution[,] . . . or there must be some showing that the persecution is due to the government's unwillingness or inability to control the conduct of private actors."  Jorgji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008) (citing Orelien, 467 F.3d at 72).  A petitioner bears the burden of proof that he or she qualifies as a refugee.  See 8 C.F.R. § 1208.13(a); see also Sok, 526 F.3d at 53.

If a petitioner can demonstrate that she was persecuted in the past, the applicable regulation affords her a rebuttable presumption that she will likely be persecuted if she were returned to her country of origin.  See 8 C.F.R. § 1208.16(b)(1); Sok, 526 F.3d at 53 (citing Rotinsulu v. Mukasey, 515 F.3d 68, 71-72 (1st Cir. 2008)).  The burden then shifts to the Government to rebut the presumption of future persecution through proof of either a fundamental change in circumstances eliminating the likelihood of persecution, or a showing that the petitioner could avoid persecution by moving elsewhere in his or her country. 8 C.F.R. § 1208.13(b)(1)(i)(A)-(B); accord Rotinsulu, 515 F.3d at 72.  A petitioner may also establish asylum eligibility based on a well-founded fear of future persecution, independently of past persecution, by demonstrating that the fear is both subjectively

-8-

genuine and objectively reasonable. See Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005).

We must remand the case for further proceedings if the agency's decision "fails to state 'with sufficient particularity and clarity the reasons for denial of asylum' or otherwise to 'offer legally sufficient reasons for [the] decision.'" Mihaylov, 379 F.3d at 21 (quoting Gailius v. I.N.S., 147 F.3d 34, 46-47 (1st Cir. 1998)).

## C. Economic Persecution

The Immigration and Nationality Act does not define persecution, and we have said that the term "is a protean word, capable of many meanings." Bocova v. Gonzáles, 412 F.3d 257, 263 (1st Cir. 2005). Generally, persecution is more than discrimination and rises above unpleasantness, harassment, and even basic suffering. See Sharari v. Gonzáles, 407 F.3d 467, 475 (1st Cir. 2005). We have held, however, that "mistreatment can constitute persecution even though it does not embody a direct and unremitting threat to life or freedom." Bocova, 412 F.3d at 263.

Sexual orientation can serve as the foundation for a claim of persecution, as it is the basis for inclusion in a particular social group. See Karouni v. Gonzáles, 399 F.3d 1163, 1172 (9th Cir. 2005) (citing Hernández-Montiel v. I.N.S., 225 F.3d 1084, 1091, 1094-95 (9th Cir. 2000)); Amanfi v. Ashcroft, 328 F.3d 719, 724 (3d Cir. 2003); see also Suzanne B. Goldberg, Give Me

-9-

<u>Liberty or Give Me Death:  Political Asylum and the Global Persecution of Lesbians and Gay Men</u>, 26 Cornell Int'l L.J. 605, 609-12 (1993) (discussing homosexuals as a particular social group).  Kadri listed his membership in a particular social group, in general, and his sexual orientation, in particular, as the basis for persecution in his asylum application.  The IJ found him credible and determined that he is a homosexual; the BIA did not disturb this finding and acknowledged that sexual orientation is a basis for inclusion in a particular social group.

Kadri argues -- and the IJ found -- that he suffered economic persecution because he could not earn a living as a medical doctor.  The BIA majority reversed the decision of the IJ. It noted that Kadri was never physically injured, arrested, or imprisoned, and concluded that "the economic deprivations [Kadri] suffered as a result of his sexual orientation . . . do not amount to persecution."  Moreover, Kadri had not met his burden of showing a well-founded fear of future persecution.  The dissenting panel member, however, would have remanded the case to the IJ to determine whether Kadri suffered past economic persecution.  The dissenting member noted that "it is not apparent that [the IJ] employed the correct standard" for economic persecution, which the dissent described as being set forth in <u>Matter of Acosta</u>, 19 I. & N. Dec. 211, 222 (BIA 1985), <u>overruled on other grounds by Matter of Mogharrabi</u>, 19 I. & N. Dec. 439 (BIA 1987), <u>abrogated on other</u>

grounds by Pitcherskaia v. I.N.S., 118 F.3d 641, 647-48 (9th Cir. 1997). He also noted that it was not clear that we have endorsed the Acosta standard.

Although the BIA dissent relied upon Matter of Acosta for its standard of economic persecution,[4] neither the BIA majority nor the IJ stated what standard was used to reject Kadri's economic persecution claim. The BIA and our sister circuits have not been consistent in articulating such a standard. Indeed, the Second Circuit in Mirzoyan v. Gonzáles, 457 F.3d 217, 222-23 (2d Cir. 2006)(per curiam), remanded its case to the BIA to clarify the applicable standard, noting that the BIA has applied at least three different standards for economic persecution over the years. The BIA responded to this instruction in In re T-Z-, 24 I & N. Dec. 163 (BIA 2007). Citing a prior case that had relied upon a 1978 House of Representatives Report, the BIA in In re T-Z- articulated the following standard for economic persecution: "[Nonphysical] harm or suffering . . . such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment, or other essentials of life" may rise to persecution. Id. at 171 (emphasis in original)(quoting H.R. Rep. No. 95-1452, as

---

[4] In Matter of Acosta, the petitioner argued that he was eligible for asylum because he claimed to have been deprived of his ability to earn a living. See 19 I. & N. Dec. at 217. Though the BIA dismissed the petition, it noted that "persecution . . . could consist of economic deprivation or restrictions so severe that they constitute a threat to an individual's life or freedom." Id. at 222.

<u>reprinted in</u> 1978 U.S.C.C.A.N. 4700, 4704, <u>available at</u> 1978 WL 8575).

In light of the intervening decision in <u>In re T-Z-</u>, and because we are unable to determine what standard the agency used in rejecting Kadri's economic persecution claim, we remand the case to the BIA to instruct the IJ to evaluate Kadri's case under the <u>In re T-Z-</u> standard. <u>See</u> <u>Manzur</u> v. <u>U.S. Dep't of Homeland Sec.</u>, 494 F.3d 281, 295 (2d Cir. 2007). Based on his testimony and the evidence he submitted, Kadri may be able to sustain a claim for economic persecution. However, that is not the issue before us. Nor do we need to address the merits of whether the BIA's new standard, under <u>In re T-Z-</u>, survives <u>Chevron</u> review.[5]

### III. <u>Conclusion</u>

For the reasons stated above, we **<u>grant</u>** Kadri's petition for review, and the case is **<u>remanded</u>** for further proceedings consistent with this opinion. The BIA's order of removal is **<u>vacated</u>**.

**<u>It is so ordered</u>**.

---

[5] Kadri maintains that he has a well-founded fear of future persecution in Indonesia on account of his sexual orientation. Because we remand on other grounds, we do not reach the issue of whether Kadri has a well-founded fear of future persecution at this time.