**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-1972

ALFREDO GREGORIO HERNANDEZ,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Brian Monahan and Ross & Associates, on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, Department of Justice, Keith I. McManus, Senior Litigation Counsel, and Brendan P. Hogan, Office of Immigration Litigation, on brief for respondent.

September 26, 2012

**LYNCH**, **Chief Judge**.  Alfredo Gregorio Hernandez petitions for review of a decision by the Board of Immigration Appeals (BIA), dated July 25, 2011, which dismissed his appeal of the decision of an immigration judge (IJ) denying his application for asylum, withholding of removal, and protection from removal under the Convention Against Torture (CAT).  We deny the petition.

Hernandez is a 33-year-old native and citizen of Guatemala, and a member of the indigenous Mayan ethnic group. Hernandez entered the United States without inspection on November 25, 1992, and timely applied for asylum within one year of his arrival.  Hernandez interviewed with an asylum officer on March 15, 2006.  The Department of Homeland Security then filed a Notice to Appear with the immigration court on July 11, 2006, to begin removal proceedings.  Hernandez was charged with removability as an alien present in the United States without having been admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A)(i).  On September 11, 2007, Hernandez admitted the allegations in the Notice to Appear and conceded removability, but he applied for relief from removal based on claims for asylum, withholding of removal, and protection under the CAT.  In the alternative, he requested voluntary departure.

On March 9, 2009, the IJ held a merits hearing on Hernandez's claims, at which Hernandez was the only witness. Hernandez testified that he left Guatemala for the United States in 1992, when he was fourteen years old, because of the then-ongoing

-2-

Guatemalan civil war, which lasted from 1960 to 1996. He stated that he had refused to join either the government army or the guerrilla army, and that the guerrillas had on one occasion threatened him with death if he helped the government.[1] Hernandez also testified that neither he nor any of his family members had been harmed by the guerrillas. He admitted that another reason why he came to the United States was because of poverty. Hernandez expressed his fear that former members of the guerrilla army and/or "clandestine" groups of former government soldiers would harm him if he returned to Guatemala in retribution for his refusal to participate in the war.

The IJ continued the hearing so that Hernandez could supplement the record with an affidavit in support of his claims and with records relating to his criminal arrests and convictions. The hearing resumed on October 8, 2009. In Hernandez's affidavit submitted for this hearing, he stated for the first time that he feared that the "clandestine" groups would target him because he is Mayan. After argument on October 9, the IJ rendered an oral decision.

The IJ found that Hernandez's testimony was credible. However, he also found that Hernandez had not met his burden of

---

[1] In his live testimony before the IJ, Hernandez stated that the guerrillas threatened him and other children with death if they aided the government forces. In his later affidavit, Hernandez seemed to expand this story to include a claim that the guerrillas also threatened him with death if he did not join them.

demonstrating that he was a "refugee," which is the threshold showing needed to obtain asylum under the Immigration and Nationality Act. See 8 U.S.C. § 1158(b)(1).[2] The IJ concluded that Hernandez's experiences in the civil war did not rise to the level of past persecution. He also found that, while Hernandez had a genuine subjective fear of future persecution, he did not have an objective well-founded fear, for several reasons. These included that the civil war had ended in 1996, and that Hernandez's family in Guatemala -- including his mother, two brothers, and a sister -- had not been harmed in the years since. Accordingly, the IJ denied Hernandez's applications for asylum and withholding of removal. The IJ also denied his claim for protection under the CAT, finding that Hernandez had not presented evidence showing that he was more likely than not to be subjected to torture in Guatemala at the behest of or with the acquiescence of the government. The IJ granted Hernandez's request for voluntary departure.

Hernandez appealed the IJ's decision to the BIA, which dismissed the appeal on July 25, 2011. The BIA affirmed the IJ's

---

[2] A refugee is a person who "is unable or unwilling to avail himself . . . of the protection of" his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). If the alien can prove past persecution based on one of these five grounds, he is entitled to a rebuttable presumption of future persecution. Orelien v. Gonzalez, 467 F.3d 67, 71 (1st Cir. 2006). If he cannot show past persecution, he may still prove eligibility by showing that he has a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Id.

-4-

determination that Hernandez had failed to meet his burden of proving that he was a refugee. It rejected Hernandez's argument, raised for the first time before the BIA, that he was entitled to asylum based on a pattern and practice of persecution of indigenous Mayans in Guatemala. This claim, the BIA found, was not supported by the record below, nor was it supported by the State Department Country Reports for Guatemala, on which Hernandez heavily relied. While the Country Reports confirmed widespread discrimination against Mayans in Guatemala, they did not depict a current pattern of persecution. The BIA found that Hernandez could not show an objective well-founded fear of future persecution based on his Mayan heritage. Finally, the BIA affirmed the IJ's decision that Hernandez had failed to carry his burden under the CAT, as his generalized assertions about human rights abuses in Guatemala did not establish that Hernandez was more likely than not to be tortured if he returned.

On October 23, 2011, Hernandez petitioned this court for review of the BIA's decision. Where, as here, the BIA adopts and affirms part of the IJ's ruling and further justifies the IJ's conclusions, we review both the BIA's and the IJ's opinions. Nako v. Holder, 611 F.3d 45, 48 (1st Cir. 2010). We review the BIA's and IJ's findings of fact under the "substantial evidence" standard, based on the administrative record as a whole. Morgan v. Holder, 634 F.3d 53, 56-57 (1st Cir. 2011). We will not reject a

factual finding "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review conclusions of law de novo, although with some deference to the BIA's interpretations of the statutes it administers. McKenzie-Francisco v. Holder, 662 F.3d 584, 586 (1st Cir. 2011).

Substantial evidence supports the BIA's and IJ's determinations that Hernandez failed to establish past persecution. Hernandez did not offer evidence that he had been physically injured, detained, or otherwise directly harmed by guerrilla or government forces before his departure from Guatemala. While threats alone may constitute persecution in "a small category of cases," Tobon-Marin v. Mukasey, 512 F.3d 28, 32 (1st Cir. 2008) (quoting Butt v. Keisler, 506 F.3d 86, 91 (1st Cir. 2007)), the single threat that Hernandez received from the guerrillas does not bring his case into that category. See, e.g., Lumataw v. Holder, 582 F.3d 78, 91 (1st Cir. 2009) (holding that a single death threat by an armed assailant did not compel a finding of past persecution where it was a one-time incident unaccompanied by physical harm). Hernandez does not seriously contest this point in his petition for review, focusing instead on his claim of a well-founded fear of future persecution based on his Mayan ethnicity.

When an asylum applicant asserts a fear of future persecution, he may establish eligibility on the grounds that "there is a pattern or practice in his . . . country of nationality

-6-

. . . of persecution of a group of persons similarly situated to the applicant on account of" the five protected asylum categories. 8 C.F.R. § 1208.13(b)(2)(iii)(A). However, "[o]ur case law has narrowly defined 'pattern or practice' to encompass only the systematic or pervasive persecution of a particular group based on a protected ground, rather than generalized civil conflict or a pattern of discrimination." Sugiarto v. Holder, 586 F.3d 90, 97 (1st Cir. 2009).

We reject Hernandez's first argument that the BIA evaluated his claim of a pattern or practice of persecution under an incorrect legal standard. Mischaracterizing the BIA's holding, Hernandez argues that the BIA improperly required him to show that he or his family had suffered direct harm in order to establish a pattern or practice. Not so. Rather, evidence that Hernandez's family members, who are themselves Mayan, had remained in Guatemala without incident was one factor supporting the BIA's conclusion that Hernandez did not face an objectively reasonable fear of future persecution. Similarly, the lack of harm to his family also weighs against Hernandez's claim that he will be targeted because of his refusal to participate in the war, since he testified that none of his other family members participated either. We have previously approved the BIA's reliance on such evidence under similar circumstances. See, e.g., Decky v. Holder, 587 F.3d 104,

112 (1st Cir. 2009); Limani v. Mukasey, 538 F.3d 25, 32 (1st Cir. 2008).

We reject Hernandez's second argument that the record compels a finding that he has an objectively reasonable fear of persecution based on his Mayan heritage. Far from it. As an initial matter, many of the sources Hernandez cites in his petition to this court regarding the treatment of indigenous Guatemalans were not in the administrative record, and we may not consider them.[3] While Hernandez referred to some of these materials in his brief before the BIA, he did not submit them as evidence. In reviewing orders of removal, we consider only the evidence that was properly before the agency. See 8 U.S.C. § 1252(b)(4)(A).

Hernandez relies mainly on the 2007 and 2008 State Department Country Reports on Guatemala, which show that Mayans suffer poverty and discrimination in that country. However, the Country Reports do not reveal a pattern or practice of persecution of Mayans. As the BIA noted, a showing of persecution requires more than a showing of discrimination. See Kadri v. Mukasey, 543 F.3d 16, 21 (1st Cir. 2008). While the Country Reports in the administrative record discuss widespread violence in Guatemala,

---

[3] These sources include: Report of the Commission for Historical Clarification, Guatemala: Memory of Silence; Human Rights Watch, World Report 2011: Guatemala; Guatemala Human Rights Commission/USA Human Rights Update June 1, 2004; and Guatemala Human Rights Commission/USA Human Rights Review January-September 2007.

they do not state that the violence is directed specifically against Mayans. In fact, the Reports do not show that the "clandestine" groups to which Hernandez refers target any particular population. The 2007 Report contains an account of three such groups operating in a Mayan town, but it is not Hernandez's town of origin, and the Report does not indicate the ethnicities of the victims in that town. Moreover, although "country conditions reports are deemed generally authoritative in immigration cases, the contents of such reports do not necessarily . . . supplant the need for particularized evidence in particular cases." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009).

We also reject Hernandez's assertion that the BIA failed to consider his pattern or practice claim. Again, the record is clear that it did. The BIA made specific reference to the Country Reports cited by Hernandez and concluded that the evidence demonstrated mere discrimination against Mayans, not rising to the level of a pattern or practice of persecution. This is a finding of fact to which we afford deference.[4] See Decky, 587 F.3d at 110

---

[4] Where the BIA referred to the absence of a protected group, it was not failing to recognize the racial status of Mayans. Rather, it was addressing a separate ground that Hernandez had argued before the IJ: namely, that Hernandez would face persecution as a member of a group consisting of persons who are perceived as wealthy upon returning from the United States. As Hernandez has not pursued that ground in his petition to this court, we do not resolve it. The BIA was correct, however, to note that this Circuit's precedent does not recognize perceived wealth as a statutorily protected social group. See, e.g., López-Castro v. Holder, 577 F.3d 49, 54 (1st Cir. 2009).

n.4. In short, there was substantial evidence to support the BIA's determination that Hernandez failed to carry his burden of showing that he had a well-founded fear of future persecution based on a pattern or practice of persecution of Mayans.

An applicant who fails to meet his burden of proof for asylum has also failed to meet his burden for withholding of removal. To make out the latter claim, the applicant must establish a "clear probability" of persecution, which is a more stringent standard than the "well-founded fear" required for asylum. Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005).

The BIA's and IJ's decisions to deny relief under the CAT were also supported by substantial evidence. In order to obtain protection from removal under the CAT, an applicant must show that he will "more likely than not" be tortured if returned to his country of origin. Orelien v. Gonzalez, 467 F.3d 67, 73 (1st Cir. 2006). In order to qualify as torture, the treatment must be "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 1208.18(a)(2), and it must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," id. § 1208.18(a)(1). Torture may be either physical or mental. Id.

Hernandez offered no evidence that he would be singled out for torture upon his return to Guatemala. The Country Reports on which he relies also do not establish that Mayans are targeted

for torture.  The BIA considered Hernandez's allegations about human rights abuses in Guatemala and concluded that, although they were relevant, these general statements were not enough to satisfy the "more likely than not" standard.  See Mendez-Barrera v. Holder, 602 F.3d 21, 28 (1st Cir. 2010) ("Although [country conditions] reports are sometimes helpful to an alien's claim [under the CAT], their generic nature is such that they are rarely dispositive.").  Neither the BIA nor the IJ impermissibly required Hernandez to show that he would face physical harm in Guatemala, as he alleges in his petition to this court.  As such, the BIA and IJ supportably rejected Hernandez's claim for protection under the CAT.

Finally, Hernandez argues for the first time before this court that his hearings before the IJ and the BIA violated his due process rights because they were not decided on a complete record.  Hernandez asserts that the IJ erroneously failed to "require" his prior counsel to submit "all evidence available to him" in support of Hernandez's application for asylum.  On a petition for review, we will not address a claim if the applicant failed to exhaust it before the agency.  See 8 U.S.C. § 1252(d)(1); Silva v. Gonzales, 463 F.3d 68, 72 (1st Cir. 2006).  This argument was available to Hernandez in his appeal to the BIA, yet he did not raise it.  We do not consider his argument here.

The petition is denied.