# United States Court of Appeals
## For the First Circuit

No. 22-1561

ISAM ABDALLAH ALZABEN,

Petitioner,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Selya, and Gelpí,
Circuit Judges.

Saher J. Macarius and Law Offices of Saher J. Macarius LLC on brief for petitioner.
Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Erica B. Miles, Assistant Director, Office of Immigration Litigation, and Nicole J. Thomas-Dorris, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

April 14, 2023

**SELYA**, **Circuit Judge**.  Petitioner Isam Abdallah Alzaben, a Jordanian national, was granted status as a conditional permanent resident of the United States as a result of his marriage to a citizen.  In time, though, his inability to prove that he entered the marriage in good faith led an immigration judge (IJ) to order his removal.  The Board of Immigration Appeals (BIA) affirmed that order, and the petitioner now seeks judicial review.  Faced with a jurisdictional maze, we proceed step by step:  in the end, we dismiss the petition in part for want of jurisdiction and deny what remains.

## I

In January of 2001, the petitioner was admitted to the United States on a B-1 visa as a temporary nonimmigrant business visitor.  See 22 C.F.R. § 41.31(a).  Later that year, he married a United States citizen, through whom he obtained status as a conditional permanent resident.  See 8 U.S.C. § 1186a(a).  In March of 2004, the couple jointly filed a petition to remove the conditions associated with the petitioner's status.  See id. § 1186a(c)(1)(A), (d)(2)(A).

As part of the review process, the United States Citizenship and Immigration Services (USCIS) interviewed the petitioner and his wife at its Boston field office on two occasions.  See id. § 1186a(c)(1)(B).  Based on those interviews, and after considering other evidence submitted by the couple, the

USCIS issued a notice that it intended to terminate the petitioner's permanent resident status unless the couple could rectify deficiencies in their petition. The couple failed to do so and, as a result, the USCIS denied the petition in September of 2008.

The USCIS proceeded to notify the petitioner that he was subject to removal under 8 U.S.C. § 1227(a)(1)(D)(i) and directed him to appear before an IJ for removal proceedings. But before his scheduled appearance, the petitioner and his wife divorced — and he then sought to lift the conditions on his permanent resident status by applying for a hardship waiver on the ground that he had entered into the marriage in good faith and that his removal would result in an extreme hardship. See id. § 1186a(c)(4); see also 8 C.F.R. § 1216.5(a)(1).

In July of 2013, the USCIS denied the waiver request. The petitioner was again placed into removal proceedings. For reasons not apparent from the record, his case remained dormant for several years before being heard in July of 2019. At that time, he reprised his contention that he was eligible for a hardship waiver due to his good-faith marriage.

In determining whether the petitioner qualified for a hardship waiver, the IJ considered, among other things, the written decision of the USCIS denying the joint petition to remove the conditions on the petitioner's permanent residence. That decision

rehearsed details from the interviews between the petitioner's former wife and the USCIS, during which she struggled to remember basic facts about the marriage (such as whether she and the petitioner shared a post-office box, what bank they used for their joint account, and even, on one occasion, the date on which they had been married). So, too, the USCIS decision indicated, based on a review of the former wife's criminal record, that during her marriage to the petitioner, she had been living at a separate address with another man, whom she identified as a former boyfriend. The decision noted that in 2004 she had given birth to a child, fathered by her boyfriend, while she had been married to the petitioner.

In response, the petitioner offered several affidavits, letters, photographs, financial records, and other documents, arguing that they proved that the marriage was genuine. The IJ afforded an affidavit from the petitioner's former wife "little to no weight" because she had not testified in person and was, therefore, not subject to cross examination. The IJ proceeded to find the other evidence offered by the petitioner to be either incredible or unpersuasive, observing that little of it bore on the bona fides of the marriage.

In addition to this evidence, the petitioner offered his own testimony. He attempted to explain why his former wife had failed to remember the basic details of their marriage when

interviewed by the USCIS, suggesting that she had been intoxicated during the interview. The IJ found that attempted explanation unconvincing.

When all was said and done, the IJ denied the waiver request and ordered the petitioner removed from the country. On appeal, the BIA reached the same conclusion. This timely petition for judicial review followed.

## II

We start with jurisdiction. "For petitions for review of BIA decisions, our jurisdiction is circumscribed by statute." Adeyanju v. Garland, 27 F.4th 25, 36 (1st Cir. 2022). Although we ordinarily have jurisdiction to review final orders of removal, see 8 U.S.C. § 1252(a)(1), Congress has foreclosed judicial review of "any . . . decision or action" over which the Attorney General or the Secretary of Homeland Security (the Secretary) exercises discretionary authority, id. § 1252(a)(2)(B)(ii). Nevertheless, the courts of appeals retain jurisdiction to review "constitutional claims or questions of law," even if such claims or questions arise in the course of decisions that are ultimately discretionary. Id. § 1252(a)(2)(D).

Whether to afford a noncitizen a hardship waiver to lift the conditions attached to his status as a permanent resident is a decision committed to the discretion of the Secretary. See id. § 1186a(c)(4). To obtain such discretionary relief, a noncitizen

- 5 -

must first demonstrate that he satisfies the eligibility requirements set forth by statute. See id. As relevant here, one eligibility criterion is that the noncitizen must have entered into his marriage with his citizen-spouse in good faith, see id. § 1186a(c)(4)(B), which requires that the noncitizen prove that he had intended to establish a life with his spouse at the time they were wed, see McKenzie-Francisco v. Holder, 662 F.3d 584, 586-87 (1st Cir. 2011). This burden can be satisfied through probative "evidence relating to the amount of commitment by both parties to the marital relationship." 8 C.F.R. § 1216.5(e)(2). How that evidence is weighed and how its credibility is assessed, though, are determinations committed to the Secretary's "sole discretion." 8 U.S.C. § 1186a(c)(4).

Here, the BIA upheld the IJ's finding that the petitioner was ineligible for discretionary relief because he had failed to establish the bona fides of his marriage. And inasmuch as the petitioner's ineligibility was dispositive of his appeal, the BIA refrained from addressing the IJ's separate determination that the petitioner's case did not warrant discretionary relief. The BIA decision, then, concerns only the statutory proviso that requires the petitioner to show that he entered into the marriage in good faith — a requirement that we have described as being "circumscribed by a legal standard" and, therefore, subject to

- 6 -

judicial review. Cho v. Gonzales, 404 F.3d 96, 100 (1st Cir. 2005).

The Attorney General resists this conclusion. He asserts that the Supreme Court's recent decision in Patel v. Garland, which held that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings," 142 S. Ct. 1614, 1627 (2022), prevents us from reviewing the BIA's finding that the petitioner had not entered into his marriage in good faith. According to the Attorney General, we must abrogate our prior precedent holding to the contrary. See United States v. Bowers, 27 F.4th 130, 134 (1st Cir. 2022) (explaining that law of circuit may be reexamined by panel when intervening Supreme Court decision undermines existing circuit law).

We think not. To begin, the Patel Court addressed the language of 8 U.S.C. § 1252(a)(2)(B)(i), which strips federal courts of jurisdiction over "any judgment" concerning the granting of discretionary relief pursuant to various enumerated provisions of the Immigration and Nationality Act. See 142 S. Ct. at 1621. The Court held that the term "any judgment" included findings of fact. Id. at 1627. The granting of a hardship waiver based on a noncitizen's good-faith marriage, though, does not fall within one of the enumerated provisions listed under section 1252(a)(2)(B)(i) but, rather, qualifies as a discretionary "decision or action" of the Secretary over which federal courts are stripped of

jurisdiction under a neighboring provision (section 1252(a)(2)(B)(ii)). See Cho, 404 F.3d at 98-99. Thus, the Supreme Court's gloss on the term "any judgment" in section 1252(a)(2)(B)(i) does not directly address the scope of the term "any decision or action" employed in section 1252(a)(2)(B)(ii).

The Attorney General nonetheless posits that the Patel Court's interpretation of section 1252(a)(2)(B)(i) applies with equal force to section 1252(a)(2)(B)(ii). But even if we assume (for the sake of argument only) that the Attorney General has it right, we are unpersuaded that such an interpretation would require an outright dismissal for lack of jurisdiction in this case.

To be sure, we previously have characterized the determination of whether a marriage was entered into in good faith as a factual finding, subject to deferential review. See, e.g., Valdez v. Lynch, 813 F.3d 407, 410 (1st Cir. 2016). But unlike the factual findings at issue in Patel — which pertained to the IJ's assessment of the petitioner's credibility and whether the petitioner had subjectively intended to misrepresent his immigration status, see 142 S. Ct. at 1620 — the determination of whether a marriage was made in good faith requires applying a statutory standard to evidence, see Cho, 404 F.3d at 101-02. The good-faith-marriage determination, then, is more appropriately conceptualized not as a wholly factual determination but, rather, as a mixed question of law and fact. See Pullman-Standard v.

- 8 -

Swint, 456 U.S. 273, 289 n.19 (1982) (defining mixed questions of law and fact as "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard").  This is important because the Supreme Court has held that such mixed questions are encompassed by section 1252(a)(2)(D), which retains judicial review over "constitutional claims or questions of law raised upon a petition," notwithstanding the jurisdiction-stripping provisions of section 1252(a)(2)(B).  Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1068-73 (2020).  Such an interpretation of section 1252(a)(2)(D) makes sense, for — as the Court noted — to hold otherwise would foreclose judicial review of any BIA decision "applying a properly stated legal standard, irrespective of how mistaken that application might be."  Id. at 1073.

We acknowledge that it may seem counterintuitive that whether a marriage was made in good faith (which we have characterized as a question of fact subject to substantial evidence review) is a question of law for the purposes of section 1252(a)(2)(D).  But that incongruity simply reflects the fact-intensive nature of the good-faith inquiry:  not all mixed questions of law and fact are mixed equally, and those that "immerse courts in case-specific factual issues" should usually be reviewed by appellate courts with deference.  U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 138

S. Ct. 960, 967 (2018).  There is no doubt, though, that whether a petitioner has proved the bona fides of his marriage is a question that implicates a legal standard.  See Cho, 404 F.3d at 100.  And "whether settled facts satisfy a legal standard" is a question that comes within the ambit of section 1252(a)(2)(D) and, thus, is properly before us on a petition for judicial review. Guerrero-Lasprilla, 140 S. Ct. at 1068.

To summarize, we proceed upon the following principles. The question of whether the petitioner entered into his marriage in good faith is a mixed question of law and fact over which we have jurisdiction, mindful that we afford the conclusion of the BIA considerable deference, upholding its determination as long as it is supported by substantial evidence.  See Cho, 404 F.3d at 100-02.  Challenges to the BIA decision that implicate pure questions of law are reviewed de novo.  See McKenzie-Francisco, 662 F.3d at 586.  Wholly factual issues, such as "[t]he determination of what evidence is credible and the weight to be given that evidence," are left by statute to the "sole discretion of the Secretary."  8 U.S.C. § 1186a(c)(4).  We thus lack jurisdiction to review those factual findings.[1]  See id.

---

[1] Whether we lack jurisdiction because those determinations are committed to the discretion of the Secretary, see Cho, 404 F.3d 101-02, or because, as the Attorney General contends, they are wholly factual findings, see Patel, 142 S. Ct. at 1627, is not essential to this case, and we need not address that distinction now.

§ 1252(a)(2)(B)(ii). To that extent, then, we must dismiss the instant petition for want of jurisdiction.

## III

Against this backdrop, we turn to the petition. "In the immigration context, judicial review typically focuses on the final decision of the BIA." Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020). But "[w]here, as here, the BIA adopts and affirms an IJ's decision 'while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit.'" Villafranca v. Lynch, 797 F.3d 91, 94 (1st Cir. 2015) (quoting Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012)).

The petitioner challenges the BIA's decision on multiple fronts, contending that it improperly upheld the IJ's factual findings, that it failed to adhere to necessary legal standards, and that it erroneously concluded that the petitioner had failed to prove the bona fides of his marriage. We address each contention in turn.

## A

In the petitioner's view, the IJ erred in making several factual determinations with respect to assessments of credibility and the weighing of evidence. Specifically, the petitioner submits that the IJ should either have credited or given more heft to the affidavit of his former wife and the testimony of her uncle. Relatedly, he submits that the IJ should have afforded more weight

- 11 -

to his testimony concerning his former wife's supposed intoxication during her interview with the USCIS (and, correspondingly, that the IJ should have afforded less weight to the statements that she made during those interviews).

As previously discussed, see supra Part II, we lack jurisdiction either to evaluate the credibility determinations of the IJ or to reexamine the weight that he gave to any particular piece of evidence. The petitioner takes a series of vigorous exceptions to how the IJ assessed the evidence, but those assessments are not for us to review.[2] See 8 U.S.C. §§ 1186a(c)(4), 1252(a)(2)(B)(ii). To the extent that the petition tries to advance these challenges, we dismiss it.

**B**

This brings us to the petitioner's contentions that the IJ, and thereafter the BIA, considered evidence in a manner that

---

[2] We pause to remark the peculiarity of the IJ granting significant weight to evidence that he did not evaluate directly but, instead, gleaned from the USCIS decision denying the joint petition. The IJ noted that although the Department of Homeland Security had provided video recordings of the former wife's interviews, the immigration court lacked the necessary equipment to view those recordings. It appears (from the record before us) that the IJ drew the facts about those interviews mainly from the USCIS decision itself. For his part, though, the petitioner neither disputes nor challenges those facts. By the same token, he does not challenge the method by which the IJ found those facts. Any arguments relating to these matters are, therefore, waived. See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 12 -

was contrary to law. As we explain below, we find those contentions to be without merit.

**1**

The petitioner suggests that it was unlawful for the IJ to consider his former wife's statements during her interview with the USCIS because she was intoxicated at the time. In support, he cites cases that address a judge's broad discretion in determining whether a witness is competent to testify in federal criminal proceedings.[3] See, e.g., United States v. Van Meerbeke, 548 F.2d 415, 418-19 (2d Cir. 1976); United States v. Harris, 542 F.2d 1283, 1302-03 (7th Cir. 1976).

This case law is wide of the mark. The petitioner's former wife did not testify before the IJ. Rather, the allegations concerning her intoxication during the USCIS interview — and we stress that they are merely allegations — stem from the petitioner's attempt to explain to the IJ (in the course of his own testimony) his former wife's inability to recall basic facts about the marriage. The IJ found that explanation unpersuasive.

Seen in that light, what the petitioner challenges, in essence, is either an assessment of his credibility or an assessment of the weight to be given to the statements of his

_____

[3] Notably, the petitioner offers no case law, statute, or regulation pertaining to the competency of a witness in the context of a removal proceeding.

- 13 -

former wife, each of which constitutes an unreviewable factual determination. See Al-Saka v. Sessions, 904 F.3d 427, 431 (6th Cir. 2018) ("[W]e may not second guess how the [BIA] assessed the weight or credibility of the evidence before coming to a decision."). "In determining whether a petitioner has raised a colorable constitutional claim or question of law, substance must triumph over form." Ramirez-Matias v. Holder, 778 F.3d 322, 326 (1st Cir. 2015). Imaginative labeling cannot create jurisdiction where none exists: a noncitizen cannot "'transform an unreviewable issue of fact into a reviewable issue of law' by the simple expedient of cloaking what is essentially a factual claim in the raiment of constitutional or legal error." Id. (quoting Alvarado v. Holder, 743 F.3d 271, 275 (1st Cir. 2014)).

As a fallback, the petitioner insists that the IJ should have excluded his former wife's statements under Rule 403 of the Federal Rules of Evidence because the statements were unduly prejudicial. But this is thin gruel: the Federal Rules of Evidence do not apply in immigration proceedings. See Miranda-Bojorquez v. Barr, 937 F.3d 1, 7 (1st Cir. 2019). Consequently, the petitioner has failed to identify a legal basis from which to challenge the IJ's consideration of those statements.

**2**

Next, the petitioner assigns error to the IJ's consideration of his former wife's extra-marital affair. That

affair, the petitioner tells us, is irrelevant to the question of whether the marriage was entered into in good faith at its inception. We do not agree.

It may be true in some circumstances that infidelity after years of marriage does not signal a lack of good faith by a couple at the time they were wed. That truism has no bearing, though, on whether the IJ — in the circumstances at hand — was precluded by law from considering the infidelity in the good-faith analysis. And the petitioner's argument runs headlong into a precedential barrier: we previously have held that, in appropriate circumstances, evidence of infidelity may be relevant to the evaluation of good faith as long as such evidence speaks to the couple's commitment to the marital relationship and such commitment, in turn, sheds light on the couple's intent at the inception of their marriage. See Lamim v. Holder, 760 F.3d 135, 137-38 (1st Cir. 2014). Here, there is simply nothing to suggest that the IJ's consideration of the infidelity was grounded in anything other than an interest in ascertaining the extent of that commitment based on factors articulated in federal regulations. See 8 C.F.R. § 1216.5(e)(2)(i)-(iv). It follows that — under these circumstances — the IJ's decision to consider the affair did not constitute an error of law.

By statute, an IJ is required to mull "any credible evidence" that concerns a petition. 8 U.S.C. § 1186a(c)(4). The petitioner argues that the IJ flouted that requirement by ignoring a key piece of evidence: a document that had granted the petitioner a power of attorney over his former wife's finances, including tax filings.

"Although an IJ may not simply ignore substantial testimonial and documentary proof, [he] need not discuss ad nauseum every piece of evidence." Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007). "So long as the IJ has given reasoned consideration to the evidence as a whole, made supportable findings, and adequately explained [his] reasoning, no more is exigible." Id. Such is the case here. The power of attorney granted to the petitioner related to his former wife's financial affairs, and the IJ plainly addressed evidence that concerned the commingling (or lack thereof) of the couple's finances. What is more, the BIA discussed the power of attorney in its reasoning and explicitly decided that the document did not alter the good-faith calculus. Reading the two decisions together, see Villafranca, 797 F.3d at 94, there is no indication that either the IJ or the BIA failed to consider the evidence as a whole.

## C

Finally, the petitioner contends that the evidence he presented to the IJ was more than sufficient to prove that he entered into the marriage in good faith. As we have said, the relevant legal standard is whether the noncitizen intended to establish a life with his spouse at the time they were wed. See McKenzie-Francisco, 662 F.3d at 586-87. The noncitizen must carry the devoir of persuasion on that question, which he can satisfy by offering credible "evidence relating to the amount of commitment by both parties to the marital relationship." Lamim, 760 F.3d at 137 (quoting 8 C.F.R. § 1216.5(e)(2)). Such evidence may include documentation of the commingling of financial assets and liabilities, evidence of cohabitation after the noncitizen obtained conditional permanent residence, birth certificates of children born as a result of the marriage, and other pertinent proof. See 8 C.F.R. § 1216.5(e)(2)(i)-(iv).

We must uphold the agency's judgment as to the question of good faith "so long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Valdez, 813 F.3d at 410 (internal quotation marks omitted) (quoting Lamim, 760 F.3d at 138). Thus, reversal is warranted only if "the record evidence would 'compel a reasonable factfinder to reach a contrary determination.'" Jing Lin v. Holder, 759 F.3d

110, 112 (1st Cir. 2014) (quoting Kinisu v. Holder, 721 F.3d 29, 34 (1st Cir. 2013)).

Taking the facts as found, we conclude that the decision of the agency (first the IJ and then the BIA) was supported by substantial evidence. The former wife's inability to recount basic facts about the marriage, as well as the evidence that she was living with another man and had a child with him, all while she was purportedly married to the petitioner, call into serious doubt the bona fides of the marriage. And even though the petitioner offered various financial records, affidavits, letters, photographs, and other evidence in an effort to support his claim that he entered into the marriage in good faith, the evidence as a whole demonstrated a severely limited commingling of assets and a generally dubious commitment to the marriage by both parties. Considering the record in its totality, there is substantial evidence justifying a reasonable belief that the marriage was not undertaken in good faith. Accordingly, we reject the petitioner's last assignment of error.

**IV**

We need go no further. For the reasons elucidated above, the petition for review is dismissed in part and denied in part.


**So Ordered**.