# United States Court of Appeals
## For the First Circuit

No. 21-2011

KARIN VILA-CASTRO;
ADRIANA ANDREA RAMIREZ-VILA;
DANIEL ANGEL RAMIREZ-SALAS,

Petitioners,

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, <u>Chief Judge</u>,
Howard and Montecalvo, <u>Circuit Judges</u>.

<u>Kimberly A. Williams</u>, with whom <u>Jeffrey B. Rubin</u>, <u>Todd C. Pomerleau</u>, and <u>Rubin Pomerleau PC</u> were on brief, for petitioners.
<u>Jesse D. Lorenz</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>David J. Schor</u>, Senior Litigation Counsel, were on brief, for respondent.

August 8, 2023

**BARRON, Chief Judge.** We have before us a petition for review of an order of the Board of Immigration Appeals ("BIA") by several Peruvian nationals who have been ordered removed from this country. The petitioners challenge the denial of their claims for asylum, withholding of removal, and protection pursuant to the regulations implementing the Convention Against Torture ("CAT"). They base the claims on their contention that they fear being seriously physically harmed or killed in Peru due to their previous involvement with the American Popular Revolutionary Alliance ("APRA") political party in that country. After careful consideration, we deny the petition.

## I.

The petitioners are Karin Vila-Castro, her husband Daniel Angel Ramirez-Salas, and their daughter Adriana Andrea Ramirez-Vila ("Adriana"), all of whom are natives and citizens of Peru. Vila-Castro and Ramirez-Salas also have another daughter -- Neosma Ramirez-Vila ("Neosma") -- who, although not herself a petitioner, was named in the proceedings before the BIA as a derivative of her parents' asylum applications. Vila-Castro and Adriana entered the United States on May 18, 2014. Ramirez-Salas entered the United States with Neosma on December 20, 2015.

Each of the petitioners was charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen unlawfully present in the United States. The petitioners conceded

- 2 -

removability in proceedings before the Immigration Judge ("IJ"). Each then sought to avoid removal by seeking asylum, withholding of removal, and CAT protection.

In advancing the claims, the petitioners rely on testimony in the removal proceedings before the IJ that they were involved with the APRA political party before they left Peru; many of Ramirez-Salas's family members were also involved with the party; Ramirez-Salas's uncle and uncle's brother-in-law were elected mayors as members of the party; and Vila-Castro worked directly on the campaigns for both of those individuals. They further rely on testimony at their removal proceedings that concerns three specific incidents that occurred in Peru before they left that country and came to the United States.

The first incident is a motorcycle accident that occurred in late 2013 and in which Neosma was injured. Vila-Castro and Ramirez-Salas testified that they believe that members of an opposing political party intentionally caused the accident and targeted Neosma due to her family's support of the APRA party.

The second incident is Vila-Castro's receipt at the family's home in April 2014 of a threatening anonymous letter. Vila-Castro and Ramirez-Salas testified that the letter was addressed to Vila-Castro specifically and that it threatened Vila-Castro and her family with death if she continued supporting the APRA party. Vila-Castro and Ramirez-Salas also testified that

Vila-Castro reported the letter to the police that same day and that the police responded that they could not investigate the letter because it was anonymous and Vila-Castro was unable to identify who had sent it.

Vila-Castro and Ramirez-Salas further testified that nine days after they reported the anonymous letter to the police, they filed a complaint with the Interior Minister of the government of Peru to initiate a police investigation. Vila-Castro testified that the Interior Minister subsequently gave her a document that ordered the local police to investigate the letter and instructed her to take the document to the police. She testified that she decided not to do so, however, because she believed the police were ineffective and corrupt and for that reason she was by that point "no longer interested" in pursuing a police investigation.

Vila-Castro and Ramirez-Salas testified that the third incident occurred "on election day" in 2014, when a group of APRA supporters (including Vila-Castro) was attacked by supporters of opposing political parties. Vila-Castro testified that she and the other APRA supporters were all aboard a large boat and that a group of supporters of opposing parties threw rocks and sticks at them to prevent them from disembarking.

Vila-Castro and Ramirez-Salas each testified that, because of these incidents, they came to believe that if they remained in Peru, they or their family members would be killed.

- 4 -

They each further testified that, because of that fear, Vila-Castro left Peru for the United States with Adriana in May 2014 and that Ramirez-Salas and Neosma remained in hiding in Ramirez-Salas's mother's house until December 2015, at which point they also left for the United States. Vila-Castro and Ramirez-Salas testified that they continue to fear that if they return to Peru they or their family members would be seriously harmed or killed.

In an order entered on February 7, 2019, the IJ treated the petitioners' testimony as credible but nonetheless ordered the petitioners removed. The BIA affirmed the IJ's ruling. This petition was then timely filed.

**II.**

"We usually review decisions of the BIA, not the IJ. But where, as here, 'the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA.'" Ordonez-Quino v. Holder, 760 F.3d 80, 87 (1st Cir. 2014) (citation omitted) (quoting Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004)). "We review the BIA's and IJ's interpretations of law de novo, 'subject to appropriate principles of administrative deference.'" Id. (quoting Larios v. Holder, 608 F.3d 105, 107 (1st Cir. 2010)). Meanwhile, "[w]e review their findings of fact . . . 'under the familiar and deferential substantial evidence standard.'" Id. (quoting Ivanov v. Holder, 736 F.3d 5, 11 (1st

- 5 -

Cir. 2013)). Under that standard, we may reject factual findings only "if the record would compel a reasonable fact-finder to reach a contrary conclusion." Id. (citing Vasili v. Holder, 732 F.3d 83, 89 (1st Cir. 2013)); see also 8 U.S.C. § 1252(b)(4)(B).

**III.**

We begin with the asylum claim. For the petitioners to establish that they are eligible for asylum, they must show that they are "unable or unwilling to return to" Peru "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); id. § 1158(b)(1). A showing of past persecution gives rise to a presumption of a well-founded fear of future persecution. See Aguilar-Escoto v. Garland, 59 F.4th 510, 518 (1st Cir. 2023).

The petitioners predicate their showing that they have a well-founded fear of persecution on their having been subject to past persecution. Because "[p]ersecution always implies some connection to governmental action or inaction," Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006), petitioners must show that the underlying past mistreatment that they allege occurred "is the 'direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct,'" id. (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005)).

- 6 -

The BIA upheld the IJ's ruling that the petitioners had failed to make the requisite showing regarding government involvement. That determination is one "of fact that we review under the highly deferential substantial evidence standard." Ortiz-Araniba v. Keisler, 505 F.3d 39, 42 (1st Cir. 2007) (citing Attia v. Gonzales, 477 F.3d 21, 23 (1st Cir. 2007)). Thus, we must uphold the BIA's ruling on this score "unless any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quoting 8 U.S.C. § 1252(b)(4)(B)).

In contending that any reasonable adjudicator would be so compelled, the petitioners rely chiefly on the evidence in the record of their efforts to have the police in Peru investigate the anonymous threatening letter that Vila-Castro received. They argue in part that this evidence shows that the police were unwilling to protect them, even if the police were not unable to do so. The petitioners emphasize in that regard that the undisputed record shows that after Vila-Castro reported the anonymous letter to the police that conveyed a death threat, the police failed to take steps to conduct a "proper investigation . . . to find who were [sic] making such threats and put an end to it." But the petitioners also argue that this same evidence also shows that the Peruvian government is unable to protect them (even though the petitioners need only make one of these two showings). They explain in this regard that the police's "failure to locate

- 7 -

the responsible parties" because of the unwillingness of the police to investigate the letter necessarily means that the Peruvian government is also unable to take any measures to protect the petitioners.

The undisputed record shows, however, that the Interior Minister of the government of Peru gave Vila-Castro a document that ordered the police in Peru to investigate the threatening letter and instructed Vila-Castro to deliver the document to the police. The record then further shows -- again, without dispute -- that Vila-Castro chose not to do so because the police "were taking too long" and so she "made a decision just to leave [her] country." Thus, we see no ground for concluding that the record compels the conclusion that the Peruvian government was either unwilling or unable to provide protection to the petitioners. See Barsoum v. Holder, 617 F.3d 73, 80 (1st Cir. 2010) (holding that the record did not compel such a conclusion when it showed that a petitioner "sought assistance from the police only once," then "never again sought their help," and otherwise had "not established that the police were actually unable or unwilling to protect him"). The petitioners do appear to be arguing that it would have been futile to have pressed for further investigation by the police because the police in Peru are "corrupt" and only "resolve things" with "money." But we have previously made clear that a "failure to report mistreatment" due to "petitioner's subjective belief

- 8 -

that authorities are corrupt . . . is not, without more, sufficient" to show that seeking police assistance would have been futile. Morales-Morales v. Sessions, 857 F.3d 130, 135 (1st Cir. 2017). And indeed, here, the respondent put forward evidence that, although corruption is a pervasive problem in Peru, the Peruvian government does take some action to investigate and prosecute corruption, and the evidence that the petitioners put forward does not compel a contrary conclusion.

We also cannot agree with the petitioners that our decision in Rosales Justo v. Sessions, 895 F.3d 154 (1st Cir. 2018), supports their position. In that case, we vacated a BIA order that overturned an IJ's finding that the Mexican government was unable to protect the petitioner. Id. at 156-57. We did so on the ground that the BIA, by pointing only to evidence that the Mexican government had investigated the murder of the petitioner's son, "missed the distinction drawn by the IJ between the Mexican government's willingness to investigate [the] murder and its ability to protect [the petitioner] in the future." Id. at 163 (emphasis added).

Of course, here, we are dealing with a case in which the BIA affirmed the IJ's finding that the petitioner had failed to show that the foreign government was unwilling or unable to provide protection. And, in any event, there is no basis for concluding that the BIA or IJ made a similar error here to the one that we

identified in Rosales-Justo. Indeed, the petitioners made no argument to the BIA that the IJ's ruling was in error because it failed to distinguish between the "unable" and "unwilling" inquiries. See 8 U.S.C. § 1252(d)(1) (requiring exhaustion); Kinisu v. Holder, 721 F.3d 29, 34 (1st Cir. 2013) (holding that court may not consider argument that petitioner failed to raise before the BIA).

## IV.

The petitioners separately challenge the BIA's order denying their claim for withholding of removal. But that claim not only requires the petitioners to satisfy the "unwilling or unable" standard but also to do so under "the even-more-demanding clear-probability test." Morales-Morales, 857 F.3d at 136. Thus, this challenge fails for the same reasons that their challenge to the denial of their asylum claim does. Id. (holding that because petitioner's asylum-based challenge failed on ground that petitioner could not show that government was unwilling or unable to protect him, petitioner's withholding-of-removal-based challenge also necessarily failed).

## V.

Finally, we must address the petitioners' challenge to the denial of their CAT claim. We have made clear that, in addressing a CAT claim, "[o]ur charge is not to look through the record searching for reasoning that the IJ might have offered, but

did not," <u>Hernandez-Martinez</u> v. <u>Garland</u>, 59 F.4th 33, 41 (1st Cir. 2023), but rather to rely "only on reasoning provided by the agency," <u>id.</u> (quoting <u>Mihaylov</u> v. <u>Ashcroft</u>, 379 F.3d 15, 21 (1st Cir. 2004)). But here, too, the IJ rejected the petitioners' CAT claim in part on the ground that the petitioners had not shown the requisite degree of connection between the alleged harm at the hands of private actors and the Peruvian government, <u>see</u> <u>Romilus</u>, 385 F.3d at 8 ("[A]n applicant [for CAT protection] must demonstrate that any torture he will suffer would be at the hands of the government or with the consent or acquiescence of the government."), and the BIA then "affirm[ed]" that ruling.[1] Thus, the petitioners' challenge to the denial of their applications for CAT protection "likewise fails for substantially the same reason

---

[1] We do note that, in affirming the IJ's ruling, the BIA mistakenly stated that the IJ "determined that [the petitioners] ha[ve] not established through record evidence that it is more likely than not that [they] would be tortured by, or at the instigation of, or with the consent or acquiescence . . . of a public official in <u>China</u>." (Emphasis added). However, the petitioners make no argument that this error merits remanding the case, and instead only argue that the BIA's "adopt[ing] the IJ's findings and only provid[ing] a cursory discussion of the IJ's reasoning" requires that we "review both the decision of the IJ and the [BIA]." Moreover, the IJ concluded that "[a]lthough country conditions evidence indicates the prevalence of violence against women, children and LGBTI persons; trafficking in persons; unlawful killings, and corruption and impunity that undermined the rule of law, the [petitioners] have not adduced sufficient evidence to establish that, if they return to their country, it is more likely than not that <u>members of the government will engage, instigate, consent, or acquiesce, in their torture</u>." (Emphasis added). We therefore affirm on that basis.

- 11 -

as do [their] challenges to the denials of [their] request[s] for asylum and withholding of removal." Morales-Morales, 857 F.3d at 136 (citing Romilus, 385 F.3d at 8).

## VI.

For these reasons, we deny the petition.

**So Ordered**.