# United States Court of Appeals
## For the First Circuit

No. 23-2031

DIANA FERNANDA MEDINA-SUGUILANDA; S.N.C.M.,

Petitioners,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Selya, and Aframe,
<u>Circuit Judges</u>.

<u>Kristian Robson Meyer</u>, with whom <u>Kevin P. MacMurray</u> and <u>MacMurray & Associates</u> were on brief, for petitioners.

<u>Robert Michael Stalzer</u>, Trial Attorney, Office of Immigration Litigation, with whom <u>Brian Boynton</u>, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, and <u>Julie M. Iversen</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

<u>SangYeob Kim</u>, with whom <u>Gilles Bissonnette</u> and <u>American Civil Liberties Union of New Hampshire</u> were on brief, for American Civil Liberties Union of New Hampshire, amicus curiae.

November 14, 2024

**AFRAME, Circuit Judge.** Diana Fernanda Medina-Suguilanda is an Ecuadorian woman who suffered domestic abuse in her home country. She has brought a petition for review challenging the administrative denial of her asylum application, which was based primarily on the contention that the Ecuadorian authorities would not, or could not, protect her from her abusive former partner.[1] The Board of Immigration Appeals ("BIA") affirmed the finding of the immigration judge ("IJ") that the petitioner had failed to show past persecution or a well-founded fear of future persecution if she were to return to Ecuador. Because we conclude that those determinations are supported by substantial evidence, we deny the petition.[2]

## I.

### A.

The petitioner is a native and citizen of Ecuador. In June 2021, she entered the United States through Texas with her former partner, Fausto David Cartuche Saraguro ("Fausto"), and their minor daughter. Two months later, the Department of Homeland

---

[1] The petitioner's daughter was listed as a derivative beneficiary of her asylum application. See Cabrera v. Garland, 100 F.4th 312, 315 n.1 (1st Cir. 2024). Because our disposition of the lead application necessarily resolves the derivative application, see id., we do not separately discuss it.

[2] In the administrative proceedings, the petitioner pressed additional claims that she does not pursue here. We therefore confine our focus to her asylum claim based on her status as an Ecuadorian woman.

Security began removal proceedings against the petitioner and her daughter.[3]  At a hearing in May 2022, the petitioner conceded inadmissibility to the United States.  Shortly thereafter, she applied for asylum.  On November 23, 2022, an IJ held a hearing on her application at which the petitioner testified.  The facts found by the IJ are as follows.

The petitioner grew up in an indigenous community in Saraguro, Ecuador.  Her father left for the United States when she was seven years old.  When the petitioner was thirteen years old, she began a relationship with Fausto, who was eighteen years old. Two years later, the petitioner gave birth to their daughter. Three months after their daughter was born, the petitioner's mother left Ecuador for the United States, and the petitioner moved in with Fausto.

The petitioner testified that, following the move, her relationship with Fausto turned "toxic."  There was substantial "conflict and constant fighting," which included Fausto punching and slapping the petitioner and using abusive language, such as calling her a "bitch" and a "whore."  Fausto also prevented the petitioner from leaving the house when she wanted and limited with whom she could speak.

---

[3]     Separate removal proceedings are also apparently pending against Fausto, who remains in the United States.

The petitioner described one occasion when Fausto shoved her to the ground while she was pushing their daughter in a stroller. Fausto's shove caused the stroller to tip over. The fall awakened their daughter, who started to cry. Neighbors observed the incident and called the police. The police responded and indicated that they wanted to arrest Fausto and take him away. The petitioner, however, asked the police not to do so because she was "afraid of retaliation" and did not want her daughter "to see her father being taken away by police officers."

The petitioner never reported Fausto to Ecuadorian authorities. Eventually, however, she was able to separate from Fausto and move with her daughter to the house where her mother had lived before departing for the United States.

In early 2021, someone tried to break into the house while the petitioner was recovering from surgery. Neighbors scared away the intruder. The petitioner believed that she was targeted because she was a woman living alone who was weak from surgery.

After the attempted break-in, the petitioner decided to leave with her daughter for the United States. She believed that she needed Fausto's permission to bring their daughter out of the country. She said that Fausto would only give permission if they all traveled together. Thus, in June 2021, the petitioner, Fausto, and their daughter left Ecuador for the United States.

- 4 -

During their travels to their eventual destination in Framingham, Massachusetts, the petitioner and Fausto shared a hotel room and a ride from New York to Massachusetts. In Framingham, the petitioner and Fausto lived at different addresses. Fausto saw his daughter occasionally but did not provide financial support. He did not attend any of his daughter's school events, although he was listed on school forms as one of her "parental point[s] of contact." The petitioner never contacted any federal or Massachusetts authorities about Fausto, and the record contains no evidence or allegations of abuse during the period that the petitioner and Fausto have lived in Framingham. When the petitioner was asked by counsel for the Department of Homeland Security who in Ecuador would harm her if she were to return, she answered "nobody."

**B.**

In a written decision, the IJ concluded that the petitioner did not qualify for asylum. The IJ began by determining that the petitioner had not suffered past persecution because the violence she suffered was not connected to government action or inaction. The IJ found that Fausto had persecuted the petitioner on account of her status as an Ecuadorian woman. He recognized that, in Ecuador, there is "a culture of machismo and misogyny . . . [that gives] rise to high levels of violence against women,

- 5 -

including . . . widespread domestic abuse," and that Fausto's abusive conduct was fueled by these societal conditions.

The IJ concluded, nevertheless, that the petitioner had failed to prove that the abuse she suffered was sufficiently connected to the Ecuadorian government's unwillingness or inability to protect her. The IJ noted that the petitioner had never reported Fausto to the police because she feared what would happen if Fausto were arrested and released. The IJ declined, however, to excuse the failure to report because reporting Fausto would not have been futile.

In reaching this conclusion, the IJ relied, in part, on the police's willingness to arrest Fausto when the neighbors reported Fausto's violent conduct. He also relied on a report from the U.S. Department of State explaining that Ecuadorian law provides for prison time and fines for perpetrators of domestic abuse and that the law also "entitles victims [of gender-based violence] to immediate protective measures designed to prevent or cease violence, such as police surveillance, placement in shelters, and awareness programs." The report further indicates that the Ecuadorian authorities generally enforce the criminal penalties and protective measures provided by law.

The IJ also rejected the petitioner's contention that, even if she had not suffered past persecution, she still had a well-founded fear of future persecution. The IJ concluded that

the petitioner had not shown that she possessed an objectively reasonable fear of Fausto or any other person. Regarding Fausto, the IJ noted that it was speculative whether Fausto would even return to Ecuador from the United States. He also highlighted other facts suggesting that the petitioner did not have a reasonable fear of future persecution by Fausto. These facts included the petitioner's travel with Fausto to the United States; their sharing a hotel room and ride on their journey; Fausto's occasional visits with his daughter and his being listed as one of her parental points of contact; and the lack of police contact initiated by the petitioner related to Fausto since coming to the United States. The IJ also noted the petitioner's testimony that there was no one else in Ecuador who would harm her.

Additionally, the IJ found that the petitioner did not have a well-founded fear of future persecution based on a pattern or practice in Ecuador of persecution against women. He determined that, while there was evidence that violence against women "is a serious problem" in Ecuador, the evidence did not show it to be "systematic or pervasive."

The BIA affirmed. It concluded that the IJ did not clearly err in rejecting the petitioner's claim that the Ecuadorian police were unwilling or unable to control Fausto's abusive conduct. It noted that, while an asylum applicant may be excused from reporting an abuser when reporting to authorities would be

futile, the IJ appropriately rejected the petitioner's futility claim based on the State Department report and evidence showing the police's willingness to arrest Fausto when called. While acknowledging the petitioner's concern that she could face retaliation if Fausto were released, it concluded that an asylum applicant cannot show that the police are unable or unwilling to act merely because they "cannot guarantee . . . perpetual safety from crime."

The BIA also affirmed the IJ's determination that the facts did not establish a well-founded fear of future persecution based on Fausto's previous conduct, given that Fausto's return to Ecuador was speculative. And it summarily affirmed the IJ's conclusion that the petitioner had failed to show a "pattern or practice of persecution" against Ecuadorian women.

## II.

### A.

When considering a petition for review in an immigration matter, we "typically focus[] on the final decision of the BIA." Ferreira v. Garland, 97 F.4th 36, 45-46 (1st Cir. 2024) (quoting Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020)). "'[T]o the extent that the BIA deferred to or adopted the IJ's reasoning, we review those portions of the IJ's decision' as well." Id. at 46 (quoting Chavez v. Garland, 51 F.4th 424, 429 (1st Cir. 2022)). When discussing such a joint decision, we refer to the BIA and IJ

collectively as "the agency."  Id. (citing Pineda-Maldonado v. Garland, 91 F.4th 76, 80 (1st Cir. 2024)).

To qualify for asylum, an applicant must show previous persecution or a well-founded fear of future persecution in his or her home country on account of, inter alia, membership in a particular social group.[4]  8 U.S.C. § 1101(a)(42)(A).  Here, the petitioner identified the relevant social group as Ecuadorian women.  See id. § 1158(b)(1)(B)(i).  Past persecution requires evidence that the asylum applicant suffered "discriminatory experiences" that "reached a fairly high threshold of seriousness" and occurred with "some regularity and frequency."  Vasili v. Holder, 732 F.3d 83, 89 (1st Cir. 2013) (quoting Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006)).  Thus, persecution requires "more than mere discomfiture, unpleasantness, harassment, or unfair treatment."  Sosa-Perez v. Sessions, 884 F.3d 74, 77 (1st Cir. 2018) (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)).

Serious abuse inflicted by a private actor based on a protected ground is not itself sufficient to establish past

---

[4]    A showing of past persecution establishes a presumption of a well-founded fear of future persecution that the government can rebut by presenting evidence that there was "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution."  8 C.F.R. § 208.13(b)(1)(i) (2024).  In this case, the government did not attempt to show such a fundamental change in circumstances for Ecuadorian women after the petitioner arrived in the United States.

persecution.  For abusive, discriminatory treatment to suffice, it must also have a government nexus.  Vila-Castro v. Garland, 77 F.4th 10, 13 (1st Cir. 2023) (citing Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006)).  An asylum applicant may establish a government nexus by showing relevant government action or inaction.  Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005).  "This means . . . that one who seeks asylum must show mistreatment that is the 'direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct.'"  Orelien, 467 F.3d at 72 (quoting Nikijuluw, 427 F.3d at 121).

The government-nexus requirement is at the center of the pending petition.  The petitioner challenges the BIA's affirmance of the IJ's conclusion that she failed to demonstrate past persecution insofar as she did not show the Ecuadorian government's unwillingness or inability to protect her from Fausto's abuse.

The petitioner, supported by amicus curiae the American Civil Liberties Union of New Hampshire ("ACLU"), begins by arguing that the BIA wrongly employed a clear-error standard when reviewing the IJ's unwilling-or-unable determinations.[5]  The petitioner and

---

[5]  We write in the plural because unwillingness and inability are separate ways for an applicant to establish the required government nexus.  Rosales Justo v. Sessions, 895 F.3d 154, 163 (1st Cir. 2018) (citing Khattak v. Holder, 704 F.3d 197, 206 (1st Cir. 2013)).

the ACLU assert that the unwilling-or-unable inquiries present mixed questions of law and fact -- that is, questions that ask "whether the rule of law as applied to the established facts is or is not violated." Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19 (1982); see also U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 583 U.S. 387, 394 (2018) (citing Pullman-Standard, 456 U.S. at 289 n.19).  As such, they contend that, while the IJ's factual findings were reviewable for clear error, the BIA was required to review de novo the IJ's ultimate determination of whether those facts amounted to an inability or unwillingness to protect the petitioner.  They assert that the BIA must engage in this bifurcated review for all mixed questions.  In support of that contention, the ACLU cites a regulation applicable to the BIA, 8 C.F.R. § 1003.1(d)(3), which provides that "[f]acts determined by the immigration judge, . . . shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous" while "questions of law, discretion, and judgment" may be reviewed de novo.

This argument fails because it is predicated upon the assumption that the unwilling and unable determinations are mixed questions of law and fact.  We have never characterized those determinations as presenting mixed questions.  Instead, we have repeatedly called them questions of fact.  Vila-Castro, 77 F.4th at 13 (describing the unwilling and unable inquiries as "one[s]

- 11 -

'of fact'" (quoting Ortiz-Araniba v. Keisler, 505 F.3d 39, 42 (1st Cir. 2007))); Rosales Justo v. Sessions, 895 F.3d 154, 161 n.6 (1st Cir. 2018) ("Whether a government is unwilling or unable to protect an asylum applicant from persecution 'is a question of fact.'" (quoting Ortiz-Araniba, 505 F.3d at 42)); Ortiz-Araniba, 505 F.3d at 42 ("The question whether the government of El Salvador is unwilling or unable to control [the applicant's] potential persecutors is a question of fact . . . ."). Following our lead, the BIA has relied on Ortiz-Araniba to conclude that "[w]hether a government is unable or unwilling to protect an individual from persecution is a question of fact" reviewed for clear error. Matter of C-G-T-, 28 I. & N. Dec. 740, 743 (2023) (citing Ortiz-Araniba, 505 F.3d at 42).

Our description of the unwilling-or-unable determinations as questions of fact, rather than mixed questions, is consistent with the common characterization of mixed questions as inquiries that require the application of legal standards, set forth in statutes, treaties, regulations, or certain constitutional or judge-made doctrines, to factual findings. See, e.g., Wilkinson v. Garland, 601 U.S. 209, 217 (2024) (statute); Guerrero-Lasprilla v. Barr, 589 U.S. 221, 225-27 (2020) (equitable tolling); Monasky v. Taglieri, 589 U.S. 68, 83-84 (2020) (treaty); Maggio v. Fulford, 462 U.S. 111, 118-19 (1983) (White, J., concurring in the judgment) (collecting constitutional doctrines

presenting mixed questions); Alzaben v. Garland, 66 F.4th 1, 7 (1st Cir. 2023) (statute); DeCarvalho v. Garland, 18 F.4th 66, 73 (1st Cir. 2021) (regulation).  Governmental unwillingness or inability to protect an asylum applicant is not "a requirement . . . 'circumscribed by a legal standard.'"  Alzaben, 66 F.4th at 6 (quoting Cho v. Gonzalez, 404 F.3d 96, 100 (1st Cir. 2005)).  Unwillingness and inability are, rather, ordinary, everyday terms that describe possible factual predicates for the satisfaction of the government-nexus element of an applicant's persecution claim.  See Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021) (describing the "nexus between" persecutory harm "and government action or inaction" as a "discrete element[]" of persecution (citing Carvalho-Frois v. Holder, 667 F.3d 69, 72 (1st Cir. 2012)).  This explains why we have described the unwilling and unable determinations as "question[s] of fact."  Rosales Justo, 895 F.3d at 161 n.6 (quoting Ortiz-Araniba, 505 F.3d at 42).  And, because the unwilling and unable determinations are fact questions, the BIA appropriately reviewed them for clear error.  Barros v. Garland, 31 F.4th 51, 57 (1st Cir. 2022) (stating that the BIA reviews an IJ's factual determinations for clear error (citing 8 C.F.R. § 1003.1(d)(3)(i) (2020))).

We turn now to the remainder of the petitioner's challenge to the agency's unwilling and unable determinations. Consistent with our description of the unwilling and unable

determinations as questions of fact, we review them "under the highly deferential substantial evidence standard."  Vila-Castro, 77 F.4th at 13 (quoting Ortiz-Araniba, 505 F.3d at 42); see, e.g., Singh v. Garland, 87 F.4th 52, 58 (1st Cir. 2023); Gómez-Medina v. Barr, 975 F.3d 27, 31-33 (1st Cir. 2020); Ortiz-Araniba, 505 F.3d at 42; Harutyunyan, 421 F.3d at 67-69.  That standard requires upholding the agency's findings of fact "so long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Murillo Morocho v. Garland, 80 F.4th 61, 65 (1st Cir. 2023) (quoting Sanabria Morales v. Barr, 967 F.3d 15, 19 (1st Cir. 2020)).  Otherwise stated, we should only disturb the agency's factual findings if a "reasonable adjudicator would be compelled" to make a contrary finding.  Singh, 87 F.4th at 57 (quoting Orelien, 467 F.3d at 70).

The agency's conclusion that the petitioner failed to show that the Ecuadorian government was unwilling or unable to protect her from Fausto was based primarily on the petitioner not reporting Fausto to the police.  The agency concluded that the authorities were willing and able to offer the petitioner protection and, thus, reporting Fausto to the police would not have been futile.  The petitioner's primary contention is that these determinations were "made against the weight of the evidence."

To establish the requisite government nexus, an asylum applicant who argues that the government was unwilling or unable to protect her usually must demonstrate that she reported the abuse to the authorities. See Morales-Morales v. Sessions, 857 F.3d 130, 135 (1st Cir. 2017). The failure to report, however, may be excused if an applicant "can demonstrate that reporting private abuse to government authorities would have been futile." Id. (citing Pavlova v. INS, 441 F.3d 82, 91 (2d Cir. 2006) and Ornelas-Chavez v. Gonzales, 458 F.3d 1052, 1058 (9th Cir. 2006)); see also Rosales Justo, 895 F.3d at 165 (citing Morales-Morales, 857 F.3d at 135).

It is undisputed that the petitioner did not report Fausto to the police. The petitioner argues that she should be excused from that failure because she feared retaliation if the authorities released Fausto. The BIA concluded, conversely, that the evidence supported the conclusion that the police were willing and able to arrest Fausto, and thus the petitioner "did not give the Ecuadorian government a meaningful opportunity to protect . . . her."

Substantial evidence supports this conclusion. In response to a question from her lawyer about the "first time . . . Fausto was violent towards" her, the petitioner related the incident when Fausto shoved her while she was walking with the stroller and the neighbors called the police. On that occasion,

- 15 -

the police wanted to arrest Fausto and "take [him] away," but the petitioner requested that the police not do so "because [she] was afraid of retaliation" and did not want her daughter "to see her father being taken away by police officers."

"[T]he most telling datum" in determining whether the government was willing and able to protect the petitioner is whether "the local authorities responded immediately to each incident." Gómez-Medina, 975 F.3d at 32 (quoting Harutyunyan, 421 F.3d at 68); see also Ortiz-Araniba, 505 F.3d at 42 (citing Harutyunyan, 421 F.3d at 68). Here, the Ecuadorian authorities received a single report about Fausto's violent conduct toward the petitioner, which occurred after Fausto's first violent act. The police responded and sought to arrest Fausto. The police's response is a strong indicium that they were willing to protect the petitioner.

The IJ also highlighted evidence suggesting that the Ecuadorian authorities would have been able to help the petitioner if she had reported Fausto. In this regard, the IJ relied on a U.S. State Department report describing the criminal penalties available under Ecuadorian law to punish perpetrators of domestic violence and the services available to protect victims from their abusers. Importantly, the State Department report indicates that the Ecuadorian authorities generally enforce these criminal penalties and provide protective measures. Thus, the record before

the agency permitted the findings that the police would and could have protected the petitioner from Fausto's abuse.

The petitioner resists this conclusion by asserting that the agency wrongly focused only on futility in determining whether the petitioner should have been excused from failing to report Fausto to the authorities. The petitioner says that, regardless of whether reporting Fausto would have been futile, she should have been excused from reporting him because doing so would have placed her in danger.

Assuming danger can, in some circumstances, excuse an applicant from reporting a persecutor to the authorities, see Matter of C-G-T-, 28 I. & N. Dec. at 743 (citing Rosales Justo, 895 F.3d at 165), those circumstances are not present here. As already discussed, the agency permissibly found that the police were willing to arrest Fausto for his abusive conduct and Ecuadorian law would have offered the petitioner protection. Moreover, the petitioner successfully extricated herself from her relationship with Fausto, later traveled cooperatively with him to the United States, and lived near him without incident in the same Massachusetts community. And, on the one occasion when Fausto's conduct was reported to the police, there is no evidence that he retaliated against anyone in the aftermath. The agency thus permissibly found that there was no adequate excuse for the petitioner's failure to report.

The petitioner's final argument is that the agency did not take adequate account of country-condition reports showing the extent of domestic violence in Ecuador, including insufficient judicial resources to handle the domestic-violence caseload. The petitioner emphasizes that the information she presented to the agency shows that, in Ecuador, "[c]rime continues to present a severe problem [because there are v]ery low rates of apprehension and conviction of criminals . . . due to limited police and judicial resources."

Country-condition reports are relevant in evaluating the willingness and ability of the government to offer protection. See Rosales Justo, 895 F.3d at 165. But such "reports do not necessarily override petitioner-specific facts." Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009) (citing Zarouite v. Gonzales, 424 F.3d 60, 63-64 (1st Cir. 2005)).

Here, the record presents a mixed picture. The particularized facts about the petitioner demonstrate that on the one occasion when the police were alerted to Fausto's abuse, they sought to arrest him. That evidence is consistent with country-condition information showing that the Ecuadorian government enforces laws that punish perpetrators of domestic violence and offers restorative services for victims. We also recognize, however, that the petitioner presented reports showing that there is a substantial amount of domestic violence in Ecuador and that

the government's resources are stretched thin in its efforts to deal with the problem.

Where, as here, the record contains evidence supporting conflicting conclusions about the government's ability to respond to the domestic-violence problem, the substantial evidence standard does the work. Under that standard, the country-condition evidence highlighted by the petitioner is not so compelling that it requires the conclusion that the government was unable to protect her. See Guaman-Loja v. Holder, 707 F.3d 119, 123 (1st Cir. 2013) ("Merely identifying alternative findings that could be supported by substantial evidence is insufficient to supplant the [IJ's] findings." (quoting Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003))). That is especially so where the only petitioner-specific evidence points in the opposite direction. See Singh, 87 F.4th at 61; Ortiz-Araniba, 505 F.3d at 42-43. Thus, while the agency might have reached a different conclusion about the government's ability to protect the petitioner, the finding that the petitioner failed to show a government nexus based on inaction is supported by substantial evidence. Accordingly, the agency permissibly concluded that the petitioner had failed to demonstrate past persecution.

**B.**

Where there has been no showing of past persecution, an applicant may still qualify for asylum by demonstrating "a

- 19 -

well-founded fear of future persecution that is 'both subjectively genuine and objectively reasonable.'" Esteban-Garcia v. Garland, 94 F.4th 186, 191 (1st Cir. 2024) (quoting Sunarto Ang v. Holder, 723 F.3d 6, 10-11 (1st Cir. 2013)).  The petitioner contends that, even assuming no past persecution, the agency should have concluded that she demonstrated a well-founded fear of future persecution based on (1) abuse she claims Fausto will inflict on her if he returns to Ecuador, and (2) the widespread and serious violence faced by Ecuadorian women generally.  Our review is again for substantial evidence.  Sunarto Ang, 723 F.3d at 12.

The agency concluded that the petitioner did not have an objectively reasonable future fear of Fausto.  In support of this conclusion, the agency observed that Fausto was now in the United States and that his return to Ecuador was speculative.  The petitioner says that Fausto is in removal proceedings in the United States, so his return to Ecuador is probable.  Even if his return is probable (and we have no information to know whether it is), the IJ, without criticism from the BIA, discussed other evidence undermining the objective reasonableness of the petitioner's alleged fear of Fausto.  This evidence included that Fausto and the petitioner shared a hotel room and ride on their journey to Massachusetts; Fausto continues to visit with his daughter and is a parental point of contact on her school forms; and the petitioner has not reported any violent incidents by Fausto since coming to

- 20 -

the United States. These facts, taken together, provide substantial evidence to support the agency's determination that, at present, the petitioner does not have an objectively reasonable fear that Fausto will harm her if she returns to Ecuador.

In addition to showing that an asylum applicant has a well-founded fear of future persecution because he or she would be singled out individually for persecution, an applicant may show that his or her social group is subject to a "pattern or practice" of persecution in the home country. 8 C.F.R. § 1208.13(b)(2)(iii) (2024); see Sunarto Ang, 723 F.3d at 11 (citing 8 C.F.R. § 1208.13(b)(2)(iii)). "An applicant who seeks asylum based on a pattern-or-practice claim must show 'systematic or pervasive persecution of a particular group based on a protected ground, rather than generalized civil conflict or a pattern of discrimination.'" Khattak, 704 F.3d at 202 (quoting Díaz-García v. Holder, 609 F.3d 21, 29 (1st Cir. 2010)).

The IJ recognized that Ecuadorian women face potential violence but concluded that this evidence was not sufficient to support a finding of pattern-or-practice persecution. As already discussed, the agency reached a supportable determination that the Ecuadorian government is willing and able to protect women from domestic violence, thus undercutting the notion that violence against Ecuadorian women results from systemic persecution spearheaded or acquiesced in by the government. Cf. Guaman-Loja,

707 F.3d at 124 (concluding that the BIA had substantial evidence to reject claim that discrimination in Ecuador "rose to the level of systemic persecution" where evidence did not compel the conclusion that the government was unwilling or unable to control the conduct of private actors). The agency's rejection of the petitioner's pattern-or-practice claim is supported by substantial evidence. Accordingly, there is no ground for granting the petition based on the agency's conclusion that the petitioner failed to demonstrate a well-founded fear of future persecution.

## III.

For the reasons discussed, we **deny** the petition for review.